RAYMOND J. THORNTON, PETITIONER-APPELLANT, v. CHAMBERLAIN MANUFACTURING CORPORATION, RESPONDENT-RESPONDENT.

Argued November 6, 1972—Decided February 6, 1973.

*Mr. Edward B. Meredith* argued the cause for appellant (*Messrs. Meredith, Meredith and Chase,* attorneys).

*Mr. Thomas J. Mannion, Jr.,* argued the cause for respondent (*Mr. A. Millard Taylor,* attorney).

The opinion of the Court was delivered by

WEINTRAUB, C. J. Petitioner was denied workmen's comsation benefits upon a finding that his injuries were not sustained in the course of his employment. The County Court agreed, and the Appellate Division affirmed. 118 *N. J. Super.* 540 (1972). We granted certification. 60 *N. J.* 502 (1972).

The facts are not in dispute. While employed as a production foreman with respondent, petitioner reprimanded an employee named Sozio for repeated failures to wear safety glasses, and several times reported such failures in writing to the employer. On one occasion Sozio told petitioner, "I'll take care of your eyes later." Some nine days after petitioner terminated his employment, he saw Sozio at a bar. As petitioner left, he was attacked by Sozio who said "remember me, remember me." Petitioner's injuries included total loss of vision in the right eye.

The attack obviously had its genesis in the employment in the sense that petitioner's performance of his assigned duty incurred the assailant's enmity and led to the attack. That the injuries were intentionally inflicted does not take them beyond the statute. Had Sozio struck petitioner while he was at work, petitioner would have been entitled to compensation benefits. *Cierpial v. Ford Motor Co.,* 16 *N. J.* 561 (1954) ; *Howard v. Harwood's Restaurant Co.,* 25 *N. J.* 72 (1957) ; *Augelli v. Rolans Credit Clothing Store,* 33 *N. J. Super.* 146 (App. Div. 1954). It was the delay in

Sozio's violent reaction that created the issue in the case, for petitioner was not at work when he was attacked; in fact his employment relationship had ended some nine days before. Because of those circumstances it was held that petitioner was not injured "in the course of" his employment and therefore not entitled to compensation.

*N. J. S. A.* 34:15–7 entitles an employee to compensation benefits:

"\* \* \* for personal injuries to \* \* \* such employee by accident arising out of and in the course of his employment."

Thus there must be injury (1) "by accident," (2) arising "out of" and (3) arising "in the course of" the employment. This test, seemingly simple, has led to volumes of opinions exploring its meaning. The constituent elements readily draw content from the legislative objective one finds in the compensation statute. If the statute is read as a narrow replacement of the common law suit between employee and employer and to continue concepts relevant to that scene, the statute will be restrained in its reach. The coverage is much more expansive if the statutory test is read to reflect a legislative purpose to transfer to the employer's enterprise the human costs reasonably related to that enterprise.

Thus the word "accident" invited disagreement as to whether some external event of an accidental quality was required or whether the unexpected injury was all the Legislature had in mind. If the common law cause of action were the proper reference, some external event would be indicated. But the legislative design to include in the employer's costs those human losses reasonably related to the operation would be furthered if the unexpected injury were itself enough to constitute an accident. That is the view we adopted. *Neylon v. Ford Motor Co.,* 10 *N. J.* 325 (1952); *Ciuba v. Irvington Varnish & Insulator Co.,* 27 *N. J.* 127 (1958); see *Russo v. Teachers' Pension & Annuity Fund,* 62 *N. J.* 142 (1973).

So, too, the phrase "arising out of" could mean different things. It could demand that the risk of injury be a risk peculiar to the job, or if a risk common to the public, that it be present to an uncommon degree in the employment. But again the purpose of the statute would be served if it need appear only that "but for" the employment the employee would not have experienced the injury in question, whether or not the risk of injury was generated or magnified by the employment, unless the risk of injury was personal to the employee. This is the view we embraced. See *Howard v. Harwood's Restaurant Co., supra,* 25 *N. J.* 72.

The phrase "in the course of," with which we are here concerned, also lends itself to different views. One could say the employee must be engaged in an assigned duty at the time of the injury. But that reading would unduly limit the statute's coverage. We have found, for example, that an employee on the employer's premises may be "in the course of" the employment before or after work or during a work recess. *Tocci v. Tessler & Weiss, Inc.,* 28 *N. J.* 582 (1959). So too we have found exceptions to the proposition that an employee is not "in the course of" his employment in coming to and going from work. See *Hammond v. Great Atlantic & Pacific Tea Co.,* 56 *N. J.* 7 (1970); *Bergman v. Parnes Brothers, Inc.,* 58 *N. J.* 559 (1971). We found in the cited cases that the injury was sufficiently work-connected to bring the employee within the coverage of the compensation law, on the thesis that the statute "provides protection for employees, not because of fault or failure of the employer, but rather upon the belief that the enterprise itself should absorb losses which inevitably and predictably are an incident of its operations." *Ricciardi v. Damar Products,* 45 *N. J.* 54, 60 (1965).

As we have said, the statute would cover petitioner's injury in the present case if the attack had occurred on the employer's premises. The employer concedes that here the injury did arise "out of" the employment, and this because of the undeniable connection between the employment and

the attack. But the employer insists the statute requires more than this work-connection, and says that because of the factors of time and place the injury did not arise "in the course of" employment. We think it plain that a denial of benefits in these circumstances could not be reconciled with the thesis we have repeatedly accepted that the Legislature intended the enterprise to absorb the related injuries of its employees. We should not say the statute fails in that objective on the facts of this case unless its language compels that answer. We think it does not.

In *Meo v. Commercial Can Corp.*, 80 *N. J. Super.* 58 (App. Div. 1963), petitioner was attacked in front of his home as he was about to drive to work. The attack arose out of a labor dispute. Petitioner, who was the plant superintendent, was on call around the clock in the sense that he was expected to respond at any hour to keep the operation going. The Appellate Division correctly declined to follow decisions elsewhere which denied recovery because the attack, although work-connected in its origin, occurred outside the working place and working hours. In finding for the employee, the court referred to *Field v. Charmette Knitted Fabric Co.*, 245 *N. Y.* 139, 156 *N. E.* 642 (1927), where compensation was ordered for the death of the general manager and superintendent of a mill who was attacked by an employee he had just discharged. The discharged employee had moved threateningly toward the deceased within the plant but others pulled him away. The attack occurred later, a few feet outside the plant when the victim emerged to go home. Of interest beyond the result there reached was the concept Chief Judge Cardozo used as the vehicle. He stressed that when the deceased stepped out of the mill he was "confronted by a danger engendered by his work within" and that "Continuity of cause has been so combined with contiguity in time and space that the quarrel from origin to ending must be taken to be one." 156 *N. E.* at 643. The contiguity in *Field* was quite evident. But the concept is viable beyond the immediate facts of that case. The sense

of the concept is that an injury "arises" in the course of employment whenever the work in fact envelopes the victim with a danger which goes with him when he leaves the course of his employment. When that is so, the accident has its origin in the course of employment, and that fact may remain decisive notwithstanding that the injurious end accrued after the victim left the physical ambit of his employment.

The subject of "delayed injury" is discussed by Larson in his treatise, 1 *Workmen's Compensation Law* (1972) §§ 29.21 and 29.22, *pp.* 452.101, *et seq.* He concludes correctly that "something is wrong with the coverage formula" when relief is denied an employee assaulted while not on duty but as the aftermath of resentment incurred in the performance of duty. *Sec.* 29.21, *p.* 452.101. The issue of course is not limited to wilful injuries. Larson cites two other cases which reached results startling by present thinking. In one, compensation was denied an employee injured when a steel sliver to which he was exposed at work fell from his eyebrow into his eye while he was en route to his home 15 minutes after the close of working hours. *American Motorists Insurance Co. v. Steel,* 229 S. W. 2d 386 (Tex. Civ. App. 1950). In the other case, an employee who forgot to remove a dynamite cap from his pocket was denied compensation because the cap was detonated while he was dressing the next morning. *Gill v. Belmar Construction Co.,* 226 *App. Div.* 616, 236 *N. Y. S.* 379 (App. Div. 1929).

The problem of delayed injury arose in *Daniello v. Machise Express Co.,* 119 *N. J. Super.* 20 (Cty. Ct. 1972), aff'd o. b., 122 *N. J. Super.* 144 (App. Div. 1973). There an employee whose clothing was saturated with jet fuel while at work was injured when the fumes were ignited upon his return to his home. Compensation was denied in the Workmen's Compensation Division but the County Court correctly reversed, finding the accident did arise "in the course of" the employment, and the Appellate Division affirmed the County Court.

■ Larson points out that the statute does not speak of an accident "occurring" in the course of employment. Rather the word used is "arising," and that word, in one of its accepted usages, means "originating." Thus an accident may fairly be said to "arise" in the course of the employment if it had its origin there in the sense that it was the end-product of a force or cause set in motion in the course of employment.[1] *Sec.* 29.22, *pp.* 452.108–09. That construction is reasonable and advances the basic purpose of the statute that an enterprise shall absorb the injuries reasonably related to it. Here the injuries were caused in every realistic sense by petitioner's exposure at work. We can think of no reason why the Legislature would want to deny relief because the work-generated force overtook petitioner at one moment rather than another.

We are mindful that in the case at hand the employment relationship itself terminated before the work-initiated hazard ended in injury to him. In this respect, this case goes beyond the authorities cited above. But we see nothing critical in that further fact. In another case that fact might play a decisive role with respect to the work-connection of an injury, but in the case at hand it does not offer a rational basis to say the burden of this injury should not be borne by the enterprise from which it so clearly emerged.

The judgment is reversed and the matter remanded to the Division for the entry of an award in favor of petitioner.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judges CONFORD and SULLIVAN —6.

*For affirmance*—None.

---

[1]This theme was applied in *Joy v. Florence Pipe Foundry Co.*, 64 *N. J. Super.* 13, 22–23 (App. Div. 1960), certif. denied, 34 *N. J.* 67 (1961), but in a different setting. There some injury was suffered at work culminating in a disability which set in after work. The disability was held compensable notwithstanding this time factor. The case now before us differs in that no physical injury occurred at work.