383 So.2d 623 (1980)
Blanche STROTHER, Petitioner,
v.
MORRISON CAFETERIA et al., Respondents.
No. 56149.
Supreme Court of Florida.
April 24, 1980.
Michael Brumer of Brumer, Moss, Cohen & Rodgers and Susan Goldman, Miami, for petitioner.
Eugene N. Betts, Fort Lauderdale, for respondents.
ALDERMAN, Justice.
We have for review by petition for writ of certiorari an order of the Industrial Relations Commission reversing the order of the judge of industrial claims and denying claimant Blanche Strother workers' compensation on the basis that while her injuries did arise out of her employment, they were not sustained in the course of her employment. The commission rendered a contrary decision in Sixty-Seven Liquors v. Gamel, IRC No. XXX-XX-XXXX (IRC Jan. 1979), cert. denied, 383 So.2d 628 (Fla. 1980), and awarded compensation to a doorman-bouncer who had been injured away from the employer's premises and outside his working hours on the ground that his injury was clearly shown to have arisen out of his employment.
The sole issue in this case of first impression is whether Strother sustained a compensable accident when she was assaulted outside the time and space limits of her employment. We hold that Strother's injuries, which had their origin and cause entirely within the course of her employment and which arose out of her employment, are compensable.
Strother, a cashier at Morrison's Cafeteria, was charged with the responsibility of handling the payment of food bills from customers from mid-afternoon to closing at nine each night. Although not a part of her regular employment, on two occasions she drove the cafeteria's manager to the bank to deposit the day's receipts. On the two days preceding the incident which resulted in the injury for which she now seeks workers' compensation, Strother observed two men in the cafeteria who were not customers or employees. On the evening of the incident, she noticed the same two men *624 enter the cafeteria in the same manner as they had entered on the two previous days. This evening, she left work and drove directly home (some fifteen or twenty minutes' drive from the cafeteria) where she was assaulted by and her purse was taken by one of the men whom she had observed in the cafeteria.
The judge of industrial claims determined that Strother was injured in a compensable accident since the circumstances of her employment exposed her to a greater risk than that of a regular cashier and that the assault arose out of and in the course of her employment. The judge accepted Strother's testimony that she was followed and attacked by the same men who were at the cafeteria, and he concluded that they thought she was carrying the cafeteria's money since they demanded "the money or deposits."
Relying on Hill v. Gregg, Gibson & Gregg, Inc., 260 So.2d 193 (Fla. 1972), Strother argues that her injuries are compensable because they "arose out of and in the course of employment" as this language is defined by Hill. She submits that her injuries arose out of and solely because of conditions connected with her employment.
Respondents, on the other hand, rely on Bituminous Casualty Corp. v. Richardson, 148 Fla. 323, 4 So.2d 378 (1941), and Southern Bell Telephone and Telegraph Co. v. McCook, 355 So.2d 1166 (Fla. 1977), and recite that to be compensable, the assault must not only have arisen out of Strother's employment but also must have occurred within the time and space limits of her employment. Respondents further contend that this case does not fall within the special hazard exception to the going and coming rule.
Section 440.02(6), Florida Statutes (1977), defines injury, for purposes of the workers' compensation act, as "personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury." Our early decision of Bituminous Casualty Corp. v. Richardson construed this language as requiring a showing that the injury both arose out of employment and occurred in the course of employment. "Arising out of" was defined to mean the origin or cause of the accident. "In the course of" employment was defined as the time, place, and circumstances under which the accident occurs. We stated as a general rule that the accident must occur while the employee is acting within the duties of his employment or in some act incidental thereto. See also Foxworth v. Florida Industrial Commission, 86 So.2d 147 (Fla. 1956), wherein we stated that compensation coverage is confined to an injury arising out of and in the course and scope of employment and both circumstances must appear before compensation can be awarded; Travelers Ins. Co. v. Taylor, 147 Fla. 210, 3 So.2d 381 (1941), wherein we held that arising out of and in the course of employment are used conjunctively, and it is indispensable to recovery that both of them be established; Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103, 196 So. 495 (1940), wherein it was held that to arise out of and in the course of employment, an injury must occur within the period of employment at a place where the injured employee may reasonably be and while he is reasonably fulfilling duties of his employment or is engaged in something incidental thereto.
More recently, in Southern Bell Telephone and Telegraph v. McCook, we reaffirmed our decision of Bituminous Casualty Corp. v. Richardson and explained that "arising out of" and "in the course of" were separate elements which must be proved to establish a compensable accident. In McCook, we were concerned with the "arising out of" element rather than "in the course of." Relying on Suniland Toys & Juvenile Furniture, Inc. v. Karns, 148 So.2d 523 (Fla. 1963), we defined "arising out of" to mean originating in some risk connected with employment or flowing as a natural consequence from the employment.
Although in several decisions, we have referred to the distinct and separate nature of the two elements of "arising out of" and "in the course of," we have also, in other *625 decisions, tended to merge these two factors together into a test of work connectedness. In Fidelity & Casualty Co. of New York v. Moore, we said:
The cases generally hold that for an injury to arise out of and in the course of one's employment, there must be some causal connection between the injury and the employment or it must have had its origin in some risk incident to or connected with the employment or that it flowed from it as a natural consequence. Another definition widely approved is that the injury must occur within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it.
196 So. at 496 (emphasis added).
Then in Sweat v. Allen, 145 Fla. 733, 200 So. 348 (1941), we allowed recovery to a deputy sheriff who, while on his way to work, was struck by a delivery truck and sustained injury to his leg which ultimately resulted in its amputation. We determined that by the nature of his employment, the deputy was continuously under a duty to protect the peace and safety of the community and to apprehend those guilty of its violation. In explanation of our result, we declared that an injury must both arise out of and be in the course of employment and proceeded to recite the alternative definitions for arising out of and in the course of one's employment which we had earlier enunciated in Fidelity & Casualty Co. of New York v. Moore.
Again, in Suniland Toys & Juvenile Furniture, Inc. v. Karns, we relied on the alternative definitions established by Fidelity & Casualty Co. of New York v. Moore to award compensation to an employee who had sustained an allergic reaction to a typhoid inoculation administered at a physician's office. We said: "[T]o be compensable, an injury must have originated in some risk connected with the employment or flowing as a natural consequence from the employment." 148 So.2d at 524.
In our 1972 decision of Hill v. Gregg, Gibson & Gregg, Inc., we again emphasized the alternative nature of the definitions established in Fidelity & Casualty Co. of New York v. Moore. We quashed the commission's order which denied compensation and held that an assault which arose out of Hill's employment was compensable even though it did not occur on the employer's premises or during working hours, and we said:
From their orders, it appears the Judge of Industrial Claims and the Industrial Relations Commission looked only to the last definition [i.e., the injury must occur within the period of employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it] and concluded Petitioner could not recover because he was not injured while at his job site working and benefiting his employer. While such a conclusion is proper under the fourth Moore definition, it is not determinative of the issue. It is necessary to also consider the first three definitions. All are alternatives. Sweat v. Allen, 1941, 145 Fla. 733, 200 So. 348.
260 So.2d at 195.
It is apparent that our prior decisions have developed inconsistent interpretations of the statutory language "arising out of and in the course of employment." One line of cases establishes a two-prong test of work connectedness where both prongs must be separately proven. The other line of cases effectually develops an arising out of and an originating in the course of employment test where either element may suffice. The present case has spotlighted the uncertainty created by the conflicting lines of cases. A resolution of this conflict must be made before we can determine whether Strother's injury is compensable.
Larson, in his treatise Workmen's Compensation Law, volume 1A, section 29.00, discusses this problem area of workers' compensation law and analyzes numerous decisions from other jurisdictions involving fact situations somewhat similar to the *626 present case where indisputably the injury arose out of the employment and where the originating cause of the injury occurred entirely within the time and space limits of employment, but where the actual injury occurred while the employee was not acting within the duties of his employment. He asserts that grave injustice occurs when courts insist on the separateness of "arising out of" and "in the course of" when the latter denotes occurrence within the period of employment at a place where the injured employee may reasonably be and while he is reasonably fulfilling duties of employment or is engaged in doing something incidental thereto. He suggests that the more reasoned approach, consistent with the goals of workers' compensation acts, is not to apply these concepts entirely independent of each other but rather to view them as parts of a single test of work connectedness where deficiencies in the strength of one factor may, in some cases, be made up by the strength in the other. He proposes that the term "arising" in the statutory phrase "arising out of and in the course of employment" be employed not only to modify "out of" but also to modify "in the course of" and then declares that arising connotes origin, not completion or manifestation. Summarizing his analysis, Larson concludes that in the cases allowing compensation for the type of injury with which we are presently concerned, the common element is the fact that the originating cause of injury arose out of and in the course of employment:
The time bomb, so to speak, is constructed and started ticking during working hours; but it happens to go off at a time and place remote from the employment. The hazards of the employment, whether the animosity of a fired employee, a needle-like shaving in the eyebrow, or dynamite cap in the pocket, follow the claimant beyond the time and space limits of his work, and there injure him.
Larson, Workmen's Compensation Law, volume 1A, section 29.22 at 5-376-77.
The early case of Matter of Field v. Charmette Knitted Fabric Co., 245 N.Y. 139, 156 N.E. 642 (1927), authored by Justice Cardozo laid the groundwork in these types of cases for utilizing the originating in the course of employment test. There recovery of workmen's compensation was allowed to a general manager and superintendent of a mill who was assaulted outside working hours and off employment premises by an employee he had discharged. On the work premises, the employee had moved threateningly toward the superintendent but had been pulled away. Justice Cardozo said: "[C]ontinuity of cause has been so combined with contiguity in time and space that the quarrel from origin to ending must be taken as one." 156 N.E. at 643. He explained that this assault was engendered on the work premises.
In cases analogous to the present one, other jurisdictions, whose workers' compensation acts speak in terms of an injury by accident "arising out of and in the course of employment," have seen fit to adopt Larson's originating rationale to avoid the inequity and illogic of denying compensation to one whose injuries indisputably arose out of employment and where the originating cause of the injury occurred during working hours and on the employment premises. For example, in Thornton v. Chamberlain Manufacturing Corp., 62 N.J. 235, 300 A.2d 146 (1973), while on the job, Thornton, a production foreman, reprimanded an employee for repeated failure to wear safety glasses and several times reported these failures to the employer. One of these times, the employee threatened Thornton by saying he would take care of Thornton's eyes later. The employee was terminated from his employment and nine days thereafter attacked Thornton and said, "Remember me, remember me." As a result of this attack, Thornton sustained total loss of vision in his right eye. Thornton was denied compensation by the commission because his injuries did not occur in the course of employment, and the county court affirmed. The New Jersey Supreme Court reversed and found that, unquestionably, the attack had its genesis in Thornton's employment. He incurred his attacker's wrath and enmity because he had performed his assigned employment duty. *627 Had he been at work when the attack occurred, there would have been no question as to the compensability of his injuries. The New Jersey court found Larson's construction of "arising out of and in the course of" reasonable and conducive to the advancement of the basic purpose of the workmen's compensation act and concluded:
Here the injuries were caused in every realistic sense by petitioner's exposure at work. We can think of no reason why the Legislature would want to deny relief because the work-generated force overtook petitioner at one moment rather than another.
300 A.2d at 149. See also Daniello v. Machise Express Co., 119 N.J. Super. 20, 289 A.2d 558 (1972), aff'd, 122 N.J. Super. 144, 299 A.2d 423 (App.Div. 1973).
In Graybeal v. Board of Supervisors of Montgomery County, 216 Va. 77, 216 S.E.2d 52 (1975), claimant, a county prosecutor, was injured by a bomb explosion at his home. The bomb was placed by an individual whom he had successfully prosecuted for second-degree murder and who, after conviction, vowed revenge on everyone who had anything to do with his conviction. The Supreme Court of Virginia acknowledged its earlier rulings that an accident occurs in the course of employment when it takes place within the specified time, space, and circumstance of the employment but modified the rule for the particular facts of the case before it where the accident arose in the course of employment. The court explained that a modified rule is permitted by the statutory language "arising . . in the course of the employment." It then proceeded to give arising its ordinary meaning of originating but further explained:
Upon first examination, this rule might appear to constitute a blending into one single test of the dual "arising out of" and "in the course of" requirements. But the "arising out of" requirement refers to causation, only incidentally related to considerations of time and space, and must be satisfied by a showing of causal connection between work and injury. The "course of" requirement, on the other hand, refers to continuity of time, space and circumstances, only incidentally related to causation. This requirement must be satisfied by a showing of an unbroken course beginning with work and ending with injury under such circumstances that the beginning and the end are connected parts of a single work-related incident.

216 S.E.2d at 54 (emphasis added).
This originating in the course of employment test has been carefully limited to those situations where the fact that originated the cause of injury occurred entirely within the time and space limits of employment. The Court of Appeals of New York, in Malacarne v. City of Yonkers Parking Authority, 41 N.Y.2d 189, 391 N.Y.S.2d 402, 359 N.E.2d 992 (1976), denied compensation to a parking lot employee who was shot in the back and killed while outside his sister's home by an assailant who had demanded the money bag containing parking lot receipts which the employee usually deposited in the bank across the street from his employment. The court determined that there was no evidence to indicate that an event ultimately culminating in the employee's death occurred within working hours and at the business premises and reasoned:
Consequently, if, in the case before us, there had been substantial evidence rather than mere conjecture to support a finding that an attempted robbery had begun at the deceased's point of departure from the parking lot itself, the board might have been entitled to consider whether that event and the subsequent shooting were but two parts of a whole. The reality, however, is that there was not a scintilla of evidence of any earlier event related to the shooting. The "money bag" statement attributed to the decedent during the testimony before the referee does not supply it. That bare statement did not include, for instance, anything to indicate that suspicious persons had been lurking in the vicinity of the parking lot, or that anyone had been seen to follow the decedent from there or, for that matter, that he had observed anyone following him at any time during his half *628 hour's drive to his sister's house until he had already arrived on her street. Even assuming that the decedent had in fact made the "money bag" statement and, in doing so, had accurately quoted his assailant, on the record here we are left then with nothing but speculation on which to base a choice from among the countless number of possibilities of where, how or why the assailant came to the erroneous belief that Malacarne would have a money bag on him when he arrived at his sister's house.
391 N.Y.S.2d at 407-8, 359 N.E.2d at 995-996.
We find the construction of "arising out of and in the course of employment," proposed by Larson and adopted by several jurisdictions to be reasonable and conducive to the basic purposes of the workers' compensation act. Essentially, the preliminary predicate for the two-pronged work connectedness test was laid in Fidelity & Casualty Co. of New York v. Moore and Hill v. Gregg, Gibson & Gregg, Inc.
We hold that to be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances. This latter factor may be proved by showing that the causative factors occurred during the time and space limits of employment.
Thus, employing this test, we hold that Strother's injury is compensable. There is no issue that the injury sustained as a result of the assault arose out of employment. Furthermore, it had its genesis at the place of employment since the assailants were actually on the business premises, casing it so to speak, and, then when Strother left, they followed her home and there assaulted her and robbed her of her purse which they thought contained the cafeteria's cash receipts. The time bomb began ticking while she was on the business premises and during working hours.
Accordingly, the order of the Industrial Relations Commission is quashed, and the order of the judge of industrial claims is reinstated.
It is so ordered.
ADKINS, Acting C.J., and BOYD, OVERTON, SUNDBERG and McDONALD, JJ., concur.