## Richmond

### Grand Union Company

### v.

### Marian White Bynum, Ronnie Melvin Bynum, Jr., Michelle Bynum and Shawna Bynum, Dependents of Ronnie M. Bynum, Deceased

September 9, 1983.

Record No. 821420.

Present: All the Justices.

*Anthony M. Thiel (Willcox, Savage, Dickson, Hollis & Eley, P.C.,* on brief), for appellant.

*Robert Frank (Robert Epstein & Associates,* on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

In this appeal from an award of death benefits by the Industrial Commission, the sole question is whether claimants' decedent died "in the course of the employment," a prerequisite for compensation under Code § 65.1-7. The appellant employer concedes that decedent's death "arose out of the employment" and was the result of an "accident," thus meeting the remaining two statutory tests of compensability.

The deceased, Ronnie M. Bynum, was manager of the Big Star Supermarket, owned by Grand Union Company, on Wickham Avenue in the City of Newport News. He lived with his family in the City of Chesapeake and commuted to work daily.

After the close of business at 7:00 p.m. on March 8, 1981, Bynum remained in the store for nearly an hour to admit some workmen. After calling his wife to tell her that he would be home soon, he drove a fellow employee, Elmore Hall, home and then stopped at the home of a friend, Jerry Sheridan. Bynum parked his car in Sheridan's driveway and entered the Sheridan home where the two men visited for a time. Sheridan was not employed by Grand Union. While there, Bynum called Frieda Barner, a fellow employee who lived nearby, and suggested that she meet him. She agreed to meet him in ten minutes. Although she was a fellow employee, Bynum's plan to see her was entirely social that evening. She testified that they were social friends and would occasionally ride around together and talk. Bynum carried the keys to the store with him at the time, as he did every evening after closing, but there is no indication in the evidence that he intended to perform any further work-related duties that day, or that any such activities were expected of him.

Bynum left Sheridan's house and reentered his car in the driveway. Before he could start it, he was approached by Elbert P. Watson, who had been waiting with two accomplices in a parked car nearby. Watson shot Bynum fatally through the car window with a .38 caliber pistol, took the supermarket keys from the dashboard, and picked up two medicine bottles which he thought might contain drugs.

Watson, who has been convicted of Bynum's murder, gave a written statement which was admitted into evidence and also testified before the deputy commissioner. He stated that he and his accomplices were looking for money to buy drugs. They parked outside the Big Star, planning a robbery, but decided to wait until Bynum, whom they knew to be the manager, emerged after closing time. They planned to force him at gunpoint to reenter the store and open the safe. When Bynum emerged with Hall, they followed him, watched him drop Hall off, and then waited for him to emerge from Sheridan's house. They hoped to find drugs on Bynum's person or in his car and to obtain access to the store by means of his keys. Watson testified that the actual shooting was accidental, caused by Bynum's attempt to slam the car door on

Watson's hand which held the pistol. They found no drugs, left Bynum's body in his car, returned to the store, entered it with Bynum's keys, and found $166.00 which they used to buy drugs.

The deputy commissioner found that Bynum died "in the course of" his employment and awarded death benefits to his dependents. The award was affirmed by the full commission on the basis of *Graybeal* v. *Montgomery County*, 216 Va. 77, 216 S.E.2d 52 (1975). The employer appeals.

In *Graybeal*, the Commonwealth's Attorney of Montgomery County was severely injured by the explosion of a bomb placed on his car by a vengeful criminal he had prosecuted. The explosion occurred in the driveway of his home after he had driven home from his office in the courthouse. He had worked there until 11:30 p.m. in preparation for the next day's trial. He had no fixed hours of employment and no identifiable workplace. His public duties required him to exercise his authority at any place within his jurisdiction, including his home, at any hour of the day or night. His exposure to the risk of injury by a vengeful criminal was unlimited as to time or place. We adopted a special rule, limited in application to such atypical situations, to recognize the realities of such a case.

We restated the fundamental applicable principles in *Baggett & Meador Cos.* v. *Dillon*, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978):

> The expressions "arising out of" and "in the course of" are not synonymous and are used conjunctively; both conditions must be present before compensation will be awarded and the burden is on the claimant to prove them by a preponderance of the evidence.
>
> The words "arising out of", as used in the Act, refer to the origin or cause of the injury while the phrase "in the course of" pertains to the time, place and circumstances under which the accident occurred. An accident occurs during the course of the employment if it takes place within the period of the employment, at a place where the employee may reasonably be expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.

Unlike the public officer in *Graybeal*, Bynum had an identifiable place of employment and identifiable work hours. His duties might require occasional departure or deviation from them, but there is no evidence that he was so engaged at the time of his death. Rather, the evidence points to a time after he had completed his work for the day, was engaged in a series of social visits, and was neither "at a place where the employee may reasonably be expected to be" nor "reasonably fulfilling the duties of his employment."

It is true, as claimant argues, that the murderer's motive was directly related to Bynum's employment as a store manager and that Bynum would not have been stalked and assaulted if he had not held that position. That evidence, however, tends only to prove causation. It satisfies the "arising out of the employment" requirement, which the employer concedes, but does not go to the dispositive question here.

In *Graybeal*, we held, in the context of the atypical circumstances of a public officer's employment, that the "in the course of" requirement could be met by "a showing of an unbroken course beginning with work and ending with injury under such circumstances that the beginning and the end are connected parts of a single work-related incident." 216 Va. at 80, 216 S.E.2d at 54. But as we pointed out in *Graybeal*, those circumstances were based upon the premise that the Commonwealth's Attorney's duties were performed at no fixed time or location, and that it would have been immaterial to his claim whether he were injured at his home, his office, or the courtroom. An extension of the *Graybeal* rule to typical employer-employee relationships would include within the "course of the employment" requirement all workers who are homeward bound after the end of the working day.* We are unwilling so to extend the coverage of the Act.

---

*As to employees having fixed hours and places of employment, subject to limited exceptions not applicable here, injuries sustained off the employer's premises while going to or from work are not within the "course of employment" and are therefore not compensable under the Act. *Kent v. Vir.-Car. Chem. Co.,* 143 Va. 62, 66, 129 S.E. 330, 331-32 (1925), 1 A. Larson, Workmen's Compensation Law § 15.00, "Going to and from work," p. 4-3 *et seq. cf.* 1A A. Larson § 29.21 "Delayed-action injuries," p. 5-359 *et seq.* (criticism of the conjunctive application of the "arising out of " and the "in the course of " tests to cases of this kind).

Finding that Bynum did not die in the course of his employment, we will reverse the award made by the Commission and enter final judgment dismissing the claimants' application.

*Reversed and final judgment.*

THOMAS, J., dissenting.

I dissent. In this case, a band of would-be criminals waited outside a Big Star store for several hours formulating a plan to rob the store. They decided to wait until the store closed then seize the decedent, whom they knew to be the store manager in possession of its keys, and force him to reopen the store so they could rob it. Their original plan was thwarted when Bynum left the store in the company of another employee. Apparently unwilling to attack two people, the would-be attackers followed Bynum in their car, waiting to catch him alone. They watched Bynum drop off his fellow employee but they did not attack him immediately. They continued to stalk him, waiting for a better opportunity to attack. They followed him to the home of one of his friends, they watched him go inside, and they waited for him to return to his car.

Bynum visited with his friend for a short time then returned to his car alone. This was the moment for which Bynum's assailants had waited. They seized the opportunity and accosted Bynum as he tried to get into his car. They demanded the keys to the store and any drugs in Bynum's possession. Bynum resisted: he tried to slam the car door. His assailants shot through the car's window and killed Bynum. They then snatched the keys to the store as they had planned to do all along. They also stole some medicine vials in Bynum's possession in hopes that the vials contained drugs. They left Bynum at the murder scene, drove back to the Big Star store, used the stolen keys to open the door, and robbed the store.

Even the majority admits that had Bynum not been the manager of the store he would not have been stalked and killed. In other words, Bynum is dead today because as a Big Star manager he had the keys to the store that his assailants wanted to rob. Yet, my Brothers in the majority have ruled that Bynum's beneficiaries are not entitled to a recovery under the Act. The result reached by the majority is shocking: it is based upon a case that does not

apply to the issue raised here; it attempts to circumvent the only case that applies directly to this problem; it ignores the purposes announced in the Act and confirmed in our cases; and it works an injustice.

The sole issue raised in this appeal is whether Bynum's death arose in the course of his employment. The majority relies upon *Baggett & Meador Cos.* v. *Dillon*, 219 Va. 633, 248 S.E.2d 819 (1978), in ruling that Bynum's death did not arise in the course of his employment. Yet, *Baggett* is inapposite. The issue there was whether the injury complained of arose out of the claimant's employment. In *Baggett* it was conceded that the injury arose in the course of employment. Here the situation is exactly opposite. Here the employer concedes that Bynum's death arose out of his employment but denies that it arose in the course of his employment. *Baggett*, then, addresses the wrong issue and is, therefore, of no precedential value in the instant case.

Even though *Baggett* addresses the wrong issue it is relied upon by the majority as if it somehow modifies the principle set forth in *Graybeal* v. *Montgomery County*, 216 Va. 77, 216 S.E.2d 52 (1975). First the majority states that *Graybeal* promulgated a special rule, then the majority says that in *Baggett* we "restated the fundamental applicable principles." Yet, *Baggett* does not mention *Graybeal* nor does it claim to speak to the *Graybeal* rule. All *Baggett* does is to state *in dictum* the very rule, on the meaning of "arising in the course of employment," that existed prior to *Graybeal*. *Baggett*, 219 Va. at 637, 248 S.E.2d at 822. Indeed, the language quoted from *Baggett* is exactly the same as the language contained in *Conner* v. *Bragg*, 203 Va. 204, 123 S.E.2d 393 (1962), which *Graybeal* modified. Thus, the majority pegs its result on a case that has nothing to do with the issue raised in this appeal.

Instead of focusing upon *Baggett* the majority should have focused upon *Graybeal*. The issue there was whether the injury complained of arose in the course of employment. There, it was conceded that the injury arose out of the claimant's employment. *Graybeal*, then, is directly applicable to the instant appeal. It is the authority by which the majority should have analyzed Bynum's beneficiaries' claims. Had proper attention been paid to *Graybeal* the majority would have seen that Bynum's beneficiaries should recover.

The facts of *Graybeal* are worth considering in detail: In 1968, Graybeal, a Commonwealth's Attorney, successfully prosecuted one Frank H. Dewease, Jr. for murder. Dewease went to prison in 1968. After he was sentenced, he vowed to get revenge against all those who had helped "put him away," particularly the prosecutor, Graybeal.

Dewease was in prison for approximately five years. When he was released, Graybeal was still the Commonwealth's Attorney. In December 1973, Dewease went to Graybeal's home and left a bomb on top of a car in Graybeal's driveway. On the day of his injury, Graybeal worked late at his office. Once he completed work he drove home. He saw a package on top of the family car, reasoned that someone in his family had left it there by mistake, and picked to up to take it inside. The package exploded, severely injuring Graybeal.

The Industrial Commission denied benefits to Graybeal on the ground that because he was injured away from work the injury did not arise in the course of employment. We found that result shocking and we reversed the Commission. In so doing we announced a modification of the former rule. Yet, instead of relying upon that modification, which is now the law of Virginia, the majority has inexplicably chosen to rely upon *dictum* in *Baggett* that merely reiterates the former rule. In *Graybeal* we wrote:

> A modified rule is permitted, we believe, by the statutory language "arising . . . in the course of the employment." An appropriate rule, limited in application, can be fashioned within the statutory language merely by shifting the emphasis . . . to the statutory word "arising" and giving it the ordinary meaning of "originating." *Under this rule, the claimant's injury would be held to have arisen in the course of his employment if it originated in the course of the employment.*

216 Va. at 79-80, 216 S.E.2d at 54 (emphasis added). *Graybeal* changed the then existing rule by stating that cases such as *Conner v. Bragg*, 203 Va. 204, 123 S.E.2d 393 (1962), were wrong in asking whether the injury complained of "occurred" in the course of employment instead of asking, as does the statute, whether the injury complained of "arose" in the course of employment. In *Graybeal*, we did at least two things: we said the correct question is the latter and we said that "arose" means originated. Thus, af-

ter *Graybeal*, where the issue is whether the injury complained of arose in the course of employment, the test is whether it originated in the course of employment.

In *Graybeal* we went on to say that to prevent a blending together of the two distinct statutory elements of "arising out of" and "arising in the course of" employment there must be a showing of a continuity of time, space, and circumstances between the work and the injury. We said that continuity could be established

> by a showing of an unbroken course beginning with work and ending with injury under such circumstances that the beginning and the end are connected parts of a single work-related incident.

216 Va. at 80, 216 S.E.2d at 54. When the foregoing considerations were applied to the facts of Graybeal's injury his injury was found to be compensable.

The instant appeal does not differ materially from *Graybeal*. Yet, the majority attempts to distinguish that case. The attempted distinction cannot withstand analysis. For example, the majority states there was no proof that when Bynum left work he intended to perform any more work-related functions or that he was expected to. Nor did any such proof exist in *Graybeal*. On the night of his injury, Graybeal completed work at his office and went home. There is no mention in *Graybeal* that he either intended to or was required to do any more work that night. That was not an issue in *Graybeal* and it should not be an issue here.

Next, the majority appears preoccupied with the fact that Bynum was engaged in social activity on the night he was killed. The majority suggests that such activity creates a valid distinction between the instant appeal and *Graybeal*. But the majority has lost sight of the fact that five years elapsed between the threat to Graybeal and his injury; five years in which Graybeal doubtless engaged in many social, familial, non job-related activities. In truth, if the focus is upon what happened after work, the facts in *Graybeal* are more attenuated than those in the instant case. Bynum was killed on the same day he was stalked. Graybeal was injured five years after he was threatened. That Bynum went to visit his friend or planned other social activities on the night he was killed has nothing whatever to do with the application of the principle announced in *Graybeal*. The issue is not where one went

or intended to go after work, the issue is whether the cause of the claimant's injury originated in the course of his employment.

Further, the majority contends that in order to find in favor of Bynum it will have to extend *Graybeal* so that the "typical employer-employee relationships would include within the 'course of employment' requirement all workers who are homeward bound after the end of the working day." That statement is an exaggeration. Nothing could be further from the truth. *Graybeal* does not need to be extended in order to resolve the instant appeal; it need only be applied as written. Moreover, there is no need to fear that a recovery for Bynum's beneficiaries will open the floodgates. Bynum was not a typical employee. He was the store manager. He had the keys. He knew how to get into the safe. He deposited the store accounts. He held a unique position of special responsibility; not every employee holds such a position. Consequently, not every employee could qualify for benefits pursuant to *Graybeal*.

Both Graybeal and Bynum confronted the same problem: the nature of their work exposed them to an increased risk of injury from an atypical accident. Graybeal was injured because of the job he did as a prosecutor. Bynum was killed because of the job he did as a store manager. Graybeal was a target because of the authority of his position. Bynum was a target because his position gave him round-the-clock access to things of value that were sought by criminals. The fact that Graybeal was a public official and Bynum was not should make no difference.

In addition to the foregoing, the majority decision completely ignores the fact that the Act is to be liberally construed to achieve its ends. As this Court has often held, the Workmen's Compensation Act was adopted for the benefit of employees and their dependents and that in order to accomplish its humane purpose, the Act is to be liberally construed. *Rust Engineering Co.* v. *Ramsey*, 194 Va. 975, 980, 76 S.E.2d 195, 199 (1953); *Dowdy* v. *Giant of Virginia*, 210 Va. 408, 171 S.E.2d 254 (1969). Indeed, one reason for the *Graybeal* rule is that the previous rule was deemed to be "both unrealistic and in derogation of the beneficent purposes of the Workmen's Compensation Act . . . ." 216 Va. at 79, 216 S.E.2d at 54. Yet the majority, instead of applying *Graybeal* in a forthright manner, which would result in a recovery for Bynum's beneficiaries, has bent over backwards to deny benefits where the decedent died in an incident that is indisputably job-related. There is no justification for such conduct by the majority.

Cases from other jurisdictions highlight the error embodied in the majority's decision. *Strother* v. *Morrison Cafeteria*, 383 So.2d 623 (Fla. 1980), addressed the same problem that is presented by the instant appeal. There, Strother, a cashier at Morrison, was attacked and robbed at her home after work. Florida's Workmen's Compensation Act had the same dual requirement as does Virginia's. The issue was whether her injury arose in the course of her employment.

The operative facts were as follows: Strother worked as a cashier in a Morrison Cafeteria on the shift from afternoon to closing. Though it was not part of her regular employment, on two occasions she drove the cafeteria's manager to the bank to deposit the day's receipts. Two days prior to the assault on her person she noticed two men lurking around the cafeteria; they were neither customers nor employees. On the day of the assault, while at work, she again saw the men lurking around the cafeteria. That evening, she left work and drove home. There she was assaulted and her purse was taken by one of the men she had seen at the cafeteria.

The industrial claims judge found that Strother was assaulted because her assailants thought she was carrying the cafeteria's money. The judge concluded that the circumstances of her employment exposed her to a greater risk than that of a regular cashier. On review, the Supreme Court of Florida, after consideration of *Graybeal* and other authorities, upheld the industrial claims court's decision and ruled that the injuries she sustained arose in the course of her employment.

The *Strother* court announced the following holding:

> We hold that to be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances. *This latter factor may be proved by showing that the causative factors occurred during the time and space limits of employment.*

383 So.2d at 628 (emphasis added). Next, the *Strother* court applied its legal conclusion to the facts and explained its decision to allow recovery in the following terms:

> Thus, employing this test, we hold that Strother's injury is compensable. There is no issue that the injury sustained as a

result of the assault arose out of employment. Furthermore, *it had its genesis at the place of employment since the assailants were actually on the business premises, casing it so to speak, and, then when Strother left, they followed her home and there assaulted her and robbed her of her purse which they thought contained the cafeteria's cash receipts. The time bomb began ticking while she was on the business premises and during working hours.*

*Id.* (Emphasis added.)

*Strother* makes clear that once one concludes that "arising in the course of employment" means "originating in the course of employment" then the inquiry is whether the injury had its genesis at the work place. Here, Bynum's death undoubtedly had its genesis at the work place.

*Thornton* v. *Chamberlain Manufacturing Corp.,* 62 N.J. 235, 300 A.2d 146 (1973), predates *Graybeal* but reaches the same conclusion. The analysis in *Thornton* is instructive. Thornton was a production foreman for Chamberlain. In that capacity he reprimanded an employee for repeated failure to wear safety glasses. Thornton also filed written reports concerning those infractions. On one occasion, the employee who received the reprimands told Thornton, "I'll take care of your eyes later." 62 N.J. at 237, 300 A.2d at 147. Thereafter, Thornton left the employ of the company. Nine days later, while Thornton was in a bar, he was attacked by the disgruntled employee and lost the sight in his right eye.

Thornton sought workmen's compensation benefits. He was first denied benefits on the ground that his injuries were not sustained in the course of his employment. On appeal to the New Jersey Supreme Court, the lower court judgment was reversed and the case remanded.

The New Jersey statute contained the same separate, conjunctive requirements as are found in the Virginia statute. In resolving the issue, the court focused upon the purpose of workmen's compensation legislation. The New Jersey high court said its state's Act was meant to "transfer to the employer's enterprise the human costs reasonably related to" his business. *Thornton,* 62 N.J. at 238, 300 A.2d at 147. The New Jersey court, therefore, concluded that the Act should be read expansively to accomplish its purposes and that Thornton should recover.

As noted above, Virginia's Act is likewise to be liberally construed to provide coverage. Undoubtedly, Virginia's Act, like the Acts of other states, is also designed to shift the risk of harm such as that which befell Bynum to his employer as opposed to society at large. In broad terms, it is fitting and proper that the entity that caused Bynum to carry the keys to the store should bear the costs of supporting Bynum's family instead of having the rest of society bear those costs.

The *Thornton* court had little problem acknowledging that Thornton's injury started at work.

> The attack obviously had its genesis in the employment in the sense that petitioner's performance of his assigned duty incurred the assailant's enmity and led to the attack.

62 N.J. at 237, 300 A.2d at 147. Similarly, Bynum's death had its genesis in his work. In executing the responsibilities of manager he was required to keep the store keys and thus became a target.

On the facts of *Thornton* the court concluded that the denial of benefits was at odds with the legislative intent that business enterprises to which injuries are related absorb the costs of harm to their employees. In ruling that Thornton's injuries arose in the course of his employment, the *Thornton* court said that "arising" means "originating" and

> [t]hus an accident may fairly be said to "arise" in the course of employment if it had its origin there in the sense that it was the end-product of a force or cause set in motion in the course of employment.

62 N.J. at 242, 300 A.2d at 149. *Thornton* fairly expresses the rationale that undergirds *Graybeal* but does so in plainer terms. If *Graybeal* is correct and "arising" means "originating," then it follows that since Bynum's death was the end-product of a force set in motion—that is, originating—in the course of employment, his beneficiaries should recover.

*Thornton* cites *Field* v. *Charmette Knitted Fabric Co.*, 245 N.Y. 139, 156 N.E. 642 (1927), which was written by then Chief Judge Cardozo who is said by *Thornton* to have developed the principle that a recovery can be had where a cause originates at work but manifests itself away from work. *Thornton* analyzed the principle created by Cardozo in the following terms:

The sense of the concept is that *an injury "arises" in the course of employment whenever the work in fact envelops the victim with a danger which goes with him when he leaves the course of his employment.* When that is so, the accident has its origins in the course of employment, and that fact may remain decisive notwithstanding that the injurious end accrued after the victim left the physical ambit of his employment.

62 N.J. at 240-41, 300 A.2d at 149 (emphasis added). Here, the danger of carrying the keys to the store went with Bynum wherever he was. He was, in the words of *Thornton*, "enveloped" by an increased risk of harm. His beneficiaries should not, then, be denied a recovery.

The instant appeal falls squarely within the principles announced in *Graybeal* and analyzed here. Here, there is no real dispute that Bynum's death originated in the course of his employment, that is, he was stalked while at work because he had the keys and killed after working hours to get those same keys. Further, the facts clearly establish an unbroken course beginning at work and ending with Bynum's death. Manifestly, if the five-year delay between the threat to Graybeal and his subsequent injury amounts to an unbroken course, then the same must be true with respect to the few hours that began with the criminal plan and ended with Bynum's death. To paraphrase *Graybeal*, Bynum's death at the hands of criminals who wanted the keys to the store no less arose in the course of his employment than if he had been shot dead in the store resisting their efforts to steal the keys. "The difference is in degree only and not in substance." 216 Va. at 80, 216 S.E.2d at 54. In the realities of the present case, the course from stalking Bynum, to formulating a criminal plan of attack, to killing Bynum and taking the keys, constituted a single work-connected incident.

The only right answer is to award compensation to Bynum's beneficiaries. Any other result works the injustice of leaving the care of Bynum's family to society at large and not upon the business entity that the General Assembly intended to leave it with.