634 So.2d 697 (1994)
Richard Alan GRENON, Appellant,
v.
CITY OF PALM HARBOR FIRE DISTRICT, et al., Appellees.
No. 92-2905.
District Court of Appeal of Florida, First District.
March 15, 1994.
Rehearing Denied May 3, 1994.
*698 Richard A. Sicking, Miami, for appellant.
Donald S. Bennett of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellees.
PER CURIAM.
In this worker's compensation appeal, claimant Richard Grenon appeals the order of the judge of compensation claims (JCC) determining that claimant's injury did not arise out of his employment and denying compensation therefor. We affirm.
Claimant was a firefighter employed by the City of Palm Harbor. He worked every third day on the 8:00 a.m. to 8:00 a.m. shift. Claimant's duties required him to live on the employer's premises while on duty for each twenty-four hour shift. On April 28, 1991, a day on which claimant was on twenty-four hour duty, claimant took his evening shower at approximately 6:00 p.m. and strained his back while putting on his underwear after the shower. Claimant began receiving chiropractic care the following day and was off of work through May 10, 1991.
Claimant testified that he first injured his back at work on November 13, 1987, while carrying a 150 lb. dummy over his shoulder during a rescue drill. Claimant did not lose any time off of work except for the day of the accident. Claimant received only three or four adjustments from Dr. Astrab, paid by the employer. Claimant testified that he had no further complaints until the instant injury of April 28, 1991. Dr. Astrab testified that after the initial injury she treated claimant again in 1990, but she also testified that claimant had completely recovered by May of 1990.
In her testimony and in a letter submitted into evidence, Dr. Astrab described claimant's condition as follows. X-rays taken on November 16, 1987, revealed some congenital abnormalities and mechanically dysfunctional joints in the L4-5 area. After the initial workplace injury, claimant was treated and discharged from active care on January 13, 1988. Claimant returned for treatment three times in May 1990. Claimant was not seen again until April 29, 1991, when he complained of acute low back pain. Claimant told Dr. Astrab that the pain occurred when he was putting on his pants after showering. Dr. Astrab opined that "this is not uncommon, and a minor action like this may exacerbate a previous old injury or unstable condition."
The JCC issued an order finding that the bunkhouse rule does not eliminate the requirement that the cause of the injury should be a risk distinctly associated with the conditions with which the claimant lived  the increased hazard doctrine. The JCC further found that claimant's back strain may have been an aggravation of a pre-existing condition which included a previously compensable injury to his back while employed by the same employer. The JCC found that Grenon's act of putting on his underwear was an *699 activity encountered in his everyday life, and found that the injury did not arise from Grenon's employment with the City, despite the fact that claimant was on call on the employer's premises at the time of the injury and despite the fact the injury may be an aggravation of a pre-existing condition which included a previous compensable injury to claimant's back.
On appeal, claimant questions whether the JCC properly applied the bunkhouse rule in determining that claimant's injury did not arise out of his employment. Relying on the bunkhouse rule, claimant would have this court construe the workers' compensation statute to find any injury sustained by a worker while on-call compensable regardless of whether the injury originated from a condition personal to the claimant, citing Carr v. United States Sugar Corp., 136 So.2d 638, 640 (Fla. 1962) (dictum). We decline to adopt this interpretation of Carr.
The statutory phrases "arising out of" and "in the course of" employment are used conjunctively. Bituminous Casualty Corp. v. Richardson, 148 Fla. 323, 4 So.2d 378 (1941) (en banc). The phrase "arising out of" refers to the origin of the cause of the accident, while the phrase "in the course of employment" refers to the time, place and circumstances under which the accident occurs. Id. In practice, both are part of a single test, such that the strength of one element may cure the weakness of the other. 1A Arthur Larson, Larson's Workmen's Compensation Law, § 29.00 (1993). To be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances. Strother v. Morrison Cafeteria, 383 So.2d 623, 626 (Fla. 1980) (approving Larson's construction).
Florida courts have narrowly construed the "arising out of" requirement in cases involving injuries from idiopathic or preexisting conditions. The Florida Supreme Court has expressly declined to broaden the purpose of workers' compensation legislation to allow recovery for all injuries occurring in the workplace, including those arising out of conditions personal to the claimant which are not caused or aggravated by industry. Strategic Marketing Systems v. Soranno, 559 So.2d 353, 354 (Fla. 1st DCA 1990) (citing Leon County School Board v. Grimes, 548 So.2d 205, 206 (Fla. 1989)). An idiopathic condition which results in injury to the worker does not "arise out of" employment unless the employment in some way contributes to the risk or aggravates the injury. Southern Bell Telephone & Telegraph Co. v. McCook, 355 So.2d 1166, 1168 (Fla. 1977). The employment must, in some way, contribute an "increased risk" of injury peculiar to that employment; otherwise, the statutory requirement that the injury "arise out of employment" would be eliminated. Grimes, 548 So.2d at 207 (citing Foxworth v. Florida Industrial Commission, 86 So.2d 147, 151 (Fla. 1955)). Thus, the mere occurrence of an injury at work, without more, is not enough to establish compensability. See McCook, 355 So.2d 1166.
To apply the bunkhouse rule in the manner suggested by appellant would give the on-call employee greater coverage than a similarly situated claimant injured during his or her regular hours of employment but whose injury was not caused by his or her employment. We believe the legislature did not intend such a result, the dictum of Carr notwithstanding. The effect of the bunkhouse rule is to establish that all activities occurring within the on-call period occur "within the course of" employment. On the other hand, the "arising out of" requirement when applied in the context of the on-call bunkhouse rule must be harmonized with the entire body of case law defining that phrase in the context of idiopathic injuries. In the "idiopathic" cases, an employee with fixed hours of employment who is clearly on duty or on paid break when injured by some "internal failure" totally unrelated and unconnected to his employment will generally not be compensated under the workers' compensation statute. Similarly, in the present case, claimant's employment or on-call status in no way posed an increased risk of the back injury which occurred. In fact, claimant testified that he did not put on his underwear any differently at the firehouse than he *700 would at home.[1] Nor was there any testimony that claimant's on-call living conditions in any way contributed to the likelihood of the occurrence of the injury.[2] Such being the case, the JCC correctly determined that claimant's injury did not arise out of his employment.
AFFIRMED.
BOOTH, MINER and WOLF, JJ., concur.
NOTES
[1] We note that where a compensable injury is followed by a noncompensable injury a question of apportionment may be raised. In this regard, the JCC's failure to make an express finding as to whether claimant's injury represented an aggravation of the prior compensable injury or an exacerbation of an idiopathic condition may appear troubling. However, appellant does not argue that the JCC erred in failing to make such a determination. Moreover, the record indicates that claimant had completely recovered from the initial injury without need for further treatment. Therefore, no apportionment would be proper.
[2] Cf. A.G. Carriers, Inc. v. Carroll, 496 So.2d 953 (Fla. 1st DCA 1986) (finding long-distance truck driver with preexisting back condition expected to sleep in truck on foam rubber mattress who aggravated back by rolling off well-worn mattress entitled to coverage because injury more likely to occur in truck rather than at home under more suitable sleeping conditions).