148 So.2d 523 (1963)
SUNILAND TOYS AND JUVENILE FURNITURE, INC. and American Casualty Company, Petitioners,
v.
Elizabeth Y. KARNS and Florida Industrial Commission, Respondents.
No. 31801.
Supreme Court of Florida.
January 9, 1963.
*524 Harry M. Ross, Miami, for petitioners.
Shevin, Goodman & Holtzman, Miami, for Elizabeth Y. Karns.
Burnis T. Coleman and Patrick H. Mears, Tallahassee for respondent, Florida Industrial Commission.
DREW, Justice.
The petition for writ of certiorari here seeks review of an order of the Industrial Commission affirming a workmen's compensation award for temporary total disability, remedial treatment and attorney's fees.
Claimant's injury, an allergenic reaction, followed typhoid injections administered during working hours in the office of a private physician at the expense of her employer's lessor in a shopping center after hurricane damage in the locality during September of 1960. The controversy here relates not to factual circumstances but to the legal consequences of substantially undisputed facts, and is a case of first impression in this jurisdiction on the question of compensation liability for injury resulting from such preventive medical treatment connected with employment.
Upon resumption of business after the hurricane emergency the claimant, a saleslady, was informed by her employer of the possibility that the public water supply serving the shopping center might be contaminated, that his lessor had arranged for typhoid inoculations to be given free of charge to employees of businesses in the center, and that employees might at their option obtain same during working hours. The bottled drinking water normally furnished employees in the store was not then provided or available to them, and prior to notice from their employer the claimant and fellow employees had already consumed tap water in the store for drinking purposes. Claimant's testimony was that she had not otherwise been exposed to a doubtful water supply.
The statute and cases establish the fundamental requirement that, in order to be compensable, an injury must have originated in some risk connected with the employment or flowing as a natural consequence from the employment.[1] We think the pivotal point in applying that rule to the situation at bar is the determination of whether in the election to obtain or accept inoculation there existed an element of coercion, direct or indirect, by employer upon employee.[2]
From the recitation of facts above it is apparent that in this case the necessity for preventive inoculations arose not only from the absence of a safe water supply in the business premises, but also from the fact that the employee, without notice of the potential contamination, had already been exposed by consumption of questionable water in the course of her employment. The Commission noted in its order that disability such as disease resulting directly from that exposure would unquestionably *525 be compensable.[3] Injury caused by preventive medical treatment reasonably required by the exposure would likewise be compensable. Whether or not the employer made any direct effort to influence claimant's decision to accept inoculation, an element of coercion undoubtedly existed in the fact of her exposure in her employment to a risk of disease from consumption of water concerning which warnings were later given. Even if an employer in this situation could choose the risk of liability for disability from disease rather than inoculation injury, the record here clearly shows that the preventive treatment was administered with his active assent and approval,[4] and we concur with the Commission's conclusion that under these circumstances the consequent disability had the requisite causal relationship to the employment and originated in a risk sufficiently connected with that employment.
The order of the full Commission also sustains the deputy's finding that the inoculation was of "benefit" and "mutually advantageous" to the employer. This finding, we think, is necessarily based on the fact that under the particular circumstances the inoculation was calculated to reduce the risk of compensable disability. We need not here determine to what extent, if any, a finding of benefit could be predicated on prevention of employee illness or absenteeism alone,[5] and we imply no approval of a doctrine which would extend compensation liability beyond the confines of injuries or risks actually incurred in the employment as distinct from those affecting the public generally, or which would attach any penalty to the commendable impulses of an employer to lend support to programs of preventive medicine. According to the evidence in the instant case, however, the interest of the employer in providing preventive inoculation was not merely to preserve public health or even a concern for the personal health of his employees, but related instead in the case of this claimant to the prevention of a potential disability to which the claimant had at the time in question been directly exposed only in the course of her employment. The record therefore fully sustains the conclusion that the preventive treatment sufficiently served the employer's special interests to bring the accidental reaction injury within the employment scope.
The petition should accordingly be denied. It is so ordered.
ROBERTS, C.J., TERRELL and THOMAS, JJ., and WILLIS, Circuit Judge, concur.
O'CONNELL and CALDWELL, JJ., dissent.
NOTES
[1] Fidelity & Casualty Co. of N.Y. v. Moore, 1940, 143 Fla. 103, 196 So. 495.
[2] While the opinions of courts in other states reflect no well defined rationale on the point, they do indicate a tendency to recognize coverage for some inoculation or injection injuries, predicated on finding of mutual benefit to employer and employee: Smith v. Brown Paper Mill Co., La. App. 1934, 152 So. 700; Saintsing v. Steinbach Co., 1949, 1 N.J. Super. 259, 64 A.2d 99; Portee v. South Carolina State Hospital, 1959, 234 S.C. 50, 106 S.E.2d 670. See also King v. J.N. Arthur, 245 N.C. 599, 96 S.E.2d 846; Smith v. Seamless Rubber Co., 111 Conn. 365, 150 A. 110, 69 A.L.R. 856.
[3] Cf. N. and L. Auto Parts Company v. Dorman, Fla.App. 1959, 111 So.2d 270, 272; Naranja Rock Co. v. Dawal Farms, Fla. 1954, 74 So.2d 282; Archibald v. Workmen's Comp. Comm., 1916, 77 W. Va. 448, 87 S.E. 791, L.R.A. 1916D, 1013.
[4] The following is an excerpt from the compensation order of the deputy sustained by the full Commission:

"Sam Gold, witness called on behalf of the employer, testified that he is an officer of Suniland Toys and Juvenile Furniture, Inc. He testified that the employer did not furnish the shots nor urge the employees to accept them. He testified that the employer's landlord, Suniland Shopping Center, offered free typhoid shots to all employees working or employed in the Center. He further testified that some of his employees did and some did not receive the shots and that if the Shopping Center had not furnished the shots the employer would not have done so * * *. He further testified that he allowed the Claimant to get her shots during working hours and that the shots would cut down time lost due to disease, which would benefit him. He further testified that giving his employees time off from work to have the shots would improve employee-employer relations."
[5] See Saintsing v. Steinbach Co., and Portee v. So. C. State Hosp., note 2, supra.