476 So.2d 1337 (1985)
Charles HOUSE, Appellant,
v.
PREFERRED AUTO LEASING & Lynn Underwriting Co. & General Rent-a-Car & American Mutual Insurance Co., Appellees.
No. BD-185.
District Court of Appeal of Florida, First District.
October 2, 1985.
Rehearing Denied November 7, 1985.
Joseph V. Barrs and Vicki L. Stolberg of Barrs, Williamson & Levens, Tampa, for appellant.
Kenneth L. Olsen of Miller, McKendree, Somers & Olsen, Tampa, for Preferred Auto Leasing and Lynn Underwriting Co.
Stephen L. Rosen and Scott B. Gorman of Morris & Rosen, P.A., Tampa, for General Rent-A-Car and American Mut. Ins. Co.
WIGGINTON, Judge.
Claimant brings this appeal from the deputy commissioner's order denying his claim for compensation benefits and medical treatment. The potential responsibility for payment of benefits fell to two employers, Preferred Auto Leasing and General Rent-A-Car. In his order, though, the deputy commissioner found neither employer to be responsible. We reverse that finding.
On November 1, 1978, while in the course of his employment with Preferred Auto Leasing, claimant suffered a compensable injury to his lower back. He came under the care of Dr. Robert Yamokoski who diagnosed a lumbosacral strain. Claimant reached maximum medical improvement on January 15, 1979, and was discharged from Dr. Yamokoski's care with a "resolved lumbar strain."
*1338 Claimant again sought treatment from Dr. Yamokoski on July 16, 1981, complaining that he still suffered back pain accompanied with severe pain radiating down his right leg. He mentioned no new accidents. Dr. Yamokoski arrived at an "unconfirmed diagnosis" of a probable lumbar disc problem causing sciatic irritation. X-rays revealed some narrowing of the L-5 and S-1 disc space.
Within one month of that visit, and without Dr. Yamokoski's knowledge, claimant sought treatment from the Palma Ceia Medical Clinic in Tampa where he had received treatment sporadically over the years, beginning in 1971 and 1972 for minor back injuries. The records from that clinic indicate a history recorded on August 14, 1981 of blackouts, fainting, and falls that claimant had been experiencing during the preceding two months. The only reference to claimant's employment with Preferred Auto Leasing was the comment, "Likes his work."
Also during this period and extending through 1982, claimant was experiencing marital problems culminating in a divorce. On February 12, 1982, following his divorce, claimant was hospitalized for psychiatric illness related to depression, being discharged on February 24. A history of no serious medical illnesses was recorded.
Claimant began working as a part-time mechanic for General Rent-A-Car in 1981, eventually leaving the employ of Preferred Auto Leasing altogether. He saw Dr. Yamokoski on March 1, 1983, complaining of low back pain and numbness in his right leg, the latter symptom having had its onset in 1980 or 1981. The doctor diagnosed claimant's condition as possible nerve root irritation on his right side emanating from a disc. Claimant later testified that the numbness had earlier caused him to fall upon exiting his automobile.
On March 26, 1983, during the course of his employment with General Rent-A-Car, upon alighting from a car while holding a tire on his shoulder, claimant's right leg collapsed causing him again to fall and to suffer injuries to his shoulder, wrist, and back. Claimant once more came under the authorized care of Dr. Yamokoski and received treatment until August of 1983, at which time the doctor was deauthorized by Preferred Auto Leasing. During an examination on July 18, Dr. Yamokoski diagnosed claimant's condition as being a possible lumbar disc protrusion or herniation. On deposition, however, he could not determine which of claimant's symptoms flowed from the 1978 compensable accident and which flowed from the 1983 accident, and was unsure of whether the first injury was the total cause of the March, 1983 fall.
Claimant has not returned to work since the March 26, 1983 accident.
Following a hearing on a claim for benefits, the deputy commissioner entered an order dealing with the issue of the responsibility of each employer separately. As to General Rent-A-Car, the second employer, the deputy denied the claim on the ground that claimant's fall "was idiopathic" and did not arise out of his employment. Specifically, the deputy found that "[n]o evidence was presented to show that the employment in any way created a greater hazard to the Claimant or that his injury in any way arose out of the employment. The fall was caused by a condition purely personal to the Claimant; his bad back and weak right leg[.]" We disagree with that finding and hold that the deputy improperly applied the rule of law relating to idiopathic conditions to the facts of this case.
The claim against General Rent-A-Car is controlled by Southern Bell Telephone and Telegraph Company v. McCook, 355 So.2d 1166, 1168 (Fla. 1977), holding that when a claimant suffers from an idiopathic, or preexisting, condition which results in injury, the injury is compensable only if the claimant can show that it "arose out of" the employment by demonstrating that the employment in some way contributed to the risk or aggravated the injury. The test amplifying this rule was subsequently set forth in Market Food Distributors, Inc. v. Levenson, 383 So.2d 726, 727 (Fla. 1st DCA 1980). Adopting Commissioner Wentworth's statement in her special concurrence *1339 in Orange County Board of County Commissioners v. Jordan, IRC Order 2-3785 (April 25, 1979), we held that the employment circumstances must have presented a risk different from those necessarily encountered in non-employment life in order for there to be a causal connection between the employment and the aggravation of the preexisting condition.
In Levenson, we concluded that the claimant's injury fortuitously occurred during the course of his employment, that the exertion required to pull out a desk drawer was no greater than one which the claimant would necessarily have encountered in normal non-employment life. In other words, the claimant suffered from an idiopathic condition which first became symptomatic during the course of employment for reasons extraneous to his job conditions or duties. However, we cannot draw the same conclusions in the instant case. We cannot equate claimant's activity of emerging from an automobile, with a tire slung over his shoulder, with the mundane exercise of opening a desk drawer. Claimant's activity was not an exertion ordinarily met every day but instead was indigenous to his work environment. Consequently, we hold that claimant's injury on March 26, 1983 did not occur fortuitously but arose out of his employment with General Rent-A-Car. In short, the accident occurring in the course of claimant's employment aggravated his idiopathic condition.
The deputy next turned to Preferred Auto Leasing's responsibility[1] and found that claimant was "not worthy of belief as to the relationship of his problems to the accident of November 1, 1978, and the extent of his disability therefrom." The deputy rejected the premise that the worsening of claimant's condition over the years was due to the accident of November 1, 1978 "and its sequelae," and rejected the testimony of Dr. Yamokoski "wherein the doctor establishes a causal relationship" between the 1978 accident and claimant's condition after March 26, 1983, since Dr. Yamokoski could not totally explain claimant's complaints of total numbness in his right leg. Instead, the deputy relied on his own interpretation of the "diagnostic workup" after March 26, 1983, and could not believe "that a single episode of trauma that remote in time from November 1, 1978, is consistent with radiographic and myelographic findings developed in 1983, especially in view of the long history of multiple trauma suffered by the Claimant as evidenced by various reports ..." Significantly, the deputy found that claimant's personal problems arising from his divorce caused claimant "an obvious emotional overlay which the Claimant is futily [sic] trying to extend on a cause and effect basis to the accident of November 1, 1978[.]" We hold that the deputy's findings are not based on competent and substantial evidence.
Although Dr. Yamokoski could not totally explain the numbness and was unsure as to whether the initial injury was the total cause of claimant's condition subsequent to the March, 1983 fall, there is nothing in the record to rule out a causal connection. Lambert Construction Co. v. Beamon, 473 So.2d 771 (Fla. 1st DCA 1985). Further, the record does not support the deputy's finding that the 1978 trauma could not be consistent with 1983 "radiographic and myelographic findings." The "long history of multiple trauma" consisted only of two instances of a strained back in 1971 and 1972, and a knee injury. Finally, there was no evidence that claimant is suffering from an "emotional overlay."[2] Therefore, we reverse the deputy's finding that the claim *1340 for benefits against Preferred Auto Leasing should be denied in its entirety.
Since we have reversed the order as far as it denies the claim for benefits against both Preferred Auto Leasing and General Rent-A-Car, we remand the cause for further proceedings on the claim. However, the deputy also found that should he award claimant compensation benefits and medical treatment after March 26, 1983, then claimant's entitlement to temporary benefits would terminate on June 13, 1983, that being the date Dr. Yamokoski released claimant to light duty work and beyond which claimant failed to make a good faith work search. Since claimant does not dispute that finding, we affirm that portion of the order and hold claimant is entitled to temporary benefits only for the period from March 26, 1983, through June 13, 1983.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
SHIVERS and WENTWORTH, JJ., concur.
NOTES
[1] The deputy noted that Preferred Auto Leasing raised a statute of limitations defense but presented no proof to support the defense. By its failure to do so, the deputy found Preferred Auto Leasing had waived the defense.
[2] The deputy's misgivings as to the claimant's credibility were based in part on the fact that claimant "limped grossly" at the hearing despite surveillance films which apparently contradicted the limp. However, the record shows that claimant's attorney informed the deputy at the hearing that claimant had twisted his ankle just prior to the hearing.