518 So.2d 327 (1987)
Thelma J. GRIMES, Appellant,
v.
LEON COUNTY SCHOOL BOARD and Royal Indemnity Company, Appellees.
No. BN-95.
District Court of Appeal of Florida, First District.
December 15, 1987.
*328 Richard M. Powers, of Richard M. Powers, P.A., Tallahassee, for appellant.
David A. McCranie, of Karl, McConnaughhay, Roland, Maida & Beal, P.A., Tallahassee, for appellees.
PER CURIAM.
The appellant in this workers' compensation case appeals an order of the deputy commissioner denying her claim for medical and temporary total disability benefits on the basis that the injury did not arise out of her employment. We reverse and remand for further proceedings.
Claimant, Thelma Grimes, was afflicted with polio as a child, and is required to wear a full brace on her right leg at all times. The brace contains a lock at the knee joint, which must be manually locked each time claimant stands. Claimant has worked for the appellee for twenty-one years, with appellee's knowledge of her handicap. On August 8, 1985, claimant was meeting with a supply salesman, who requested to see one of her files. When she arose from her desk to retrieve the file, she manually locked the brace as usual. The brace, however, gave way, causing claimant to fall and fracture her left ankle. Claimant testified at the hearing that her working conditions were very crowded, much more so than her home, and that she was required to constantly get up and down from her desk.

I.
A compensable injury under the Florida workers' compensation statute must "arise out of" employment. §§ 440.02(1) and (14), 440.09, Fla. Stat. (1985). An accidental fall caused by a so-called preexisting condition which results in injury to a worker does not "arise out of" employment, it has been held, unless the accident relates to the employment in some way in the sense that the employment contributes to the risk or aggravates the injury. Southern Bell Telephone & Telegraph Co. v. McCook, 355 So.2d 1166 (Fla. 1977); Bison Co. v. Shubert, 494 So.2d 253 (Fla. 1st DCA 1986); House v. Preferred Auto Leasing, 476 So.2d 1337 (Fla. 1st DCA 1985); Market Food Distributors, Inc. v. Levenson, 383 So.2d 726 (Fla. 1st DCA 1980). In Medeiros v. Residential Communities of America, 481 So.2d 92, 93 (Fla. 1st DCA 1986), we stated that such an injury "arises out of" employment "when the employment necessarily exposes the claimant to conditions that substantially contribute to the risk of injury, conditions which the claimant would not normally encounter during his nonemployment life."
The facts of the instant case are, we believe, similar to those in Cheney v. F.E.C. News Distribution Co., 382 So.2d 1291 (Fla. 1st DCA 1980), in which we reversed the deputy commissioner's finding that claimant's injury did not arise out of employment. In Cheney, the claimant suffered from a preexisting injury which caused headaches and dizziness. While working in a job that required him to bend, turn, and twist, claimant became dizzy, fell, *329 and injured his head. In the instant case, claimant's job required her to constantly get up and down from her desk, and to work in an area which was considerably more crowded than her home environment. As in Cheney, it is less likely that claimant would have fallen at home where she could have better and more selectively controlled her positional changes. As in Cheney, claimant could have also controlled the amount of her activities at home, while she could not do so at work. We hold that claimant's employment exposed her to conditions which substantially contributed to the risk of her injury, and that she suffered a compensable injury arising out of and in the course of her employment within the meaning of that term as used in chapter 440.

II.
Our conclusion that this case is more like Cheney than other cases disallowing compensability for idiopathic falls is a close call, and was made extremely difficult by the diverse decisions on this issue. This case is subject to the increased-hazard doctrine, which holds that an injury resulting from risks or conditions solely personal to the claimant does not meet the statutory definition of injury in section 440.01(14) requiring it to be caused "by accident arising out of and in the course of employment," unless the employment contributes to the risk or aggravates the injury. Difficulties inherent in the application of this approach have left the decisional law in a state of confusion with inconsistent results. Such inconsistency has resulted in discriminatory application of the workers' compensation statute and is simply bad law. For this reason, it is time to reexamine the origin and logic of the increased-hazard doctrine as applied to idiopathic falls.
Florida has not always followed the increased-hazard doctrine. The first case to address the issue, Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342 (1944), involved a fall caused by a fainting spell attributable to a preexisting heart condition in which the claimant struck his head against the concrete floor, causing a skull fracture resulting in death. The court held that the injury was caused by a fall during the course of employment, and regardless of whether the fall itself was attributable to an idiopathic condition, the injury was compensable, stating:
The purpose of the act is to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense. Our act affords no relief for disease of physical ailment not produced by industry. The act removes all question of negligence, assumption of risk or wrong-doing on the part of the employer. To our mind what impels us to uphold this judgment, primarily, is that the injury which actually produced death was the fracture.

The fact that Cline suffered from heart disease which, [sic] no doubt caused him to fall, does not preclude recovery. The chances are he might have fallen and sustained a fatal injury in his own home, yet, it is less likely had he remained in the quiet of his own home, for without the physical exertion encountered in his work by a man of his age and physical condition, the chances of his falling were less likely. Had Cline fallen onto a piece of machinery and sustained the injury an award would hardly be questioned. The fact that he chanced to fall on the floor and unfortunately lost his life should not preclude an award. ... The Compensation Law is based primarily on social responsibility of one to another. It surely cannot be said that its benefits should be extended in a less degree to those less fortunate than the average worker.
16 So.2d at 343 (emphasis added).
The court in Protectu, as reflected in the above quotation, looked primarily to the fall onto the floor as the cause of the injury, rather than focusing on the precipitating cause of the fall  claimant's preexisting heart condition. This construction of the statute is simple, straightforward, and easy to apply in a consistent and nondiscriminatory fashion. Unfortunately, later *330 opinions seized upon the fact that Protectu's fall was upon a concrete floor, and opined that the hardness of the floor increased the hazard of employment, thereby making the claim compensable. See Foxworth v. Florida Industrial Commission, 86 So.2d 147, 151 (Fla. 1955), stating:
This decision [Protectu Awning Shutter Co. v. Cline] is justified on the basis that the hardness of the floor was an increased hazard attributable to the employment, but that case represents the outer limits of the doctrine. To extend the rule further would be to eradicate completely the statutory requirement that the injury must be one arising out of the employment. The employment in some manner must contribute an increased hazard peculiar to the employment.
In Foxworth, the court for the first time explicitly aligned itself with those jurisdictions holding that when a worker's fall may be characterized as idiopathic, i.e., caused by a condition personal to claimant, the claim will not be compensable unless the employment condition contributed to the risk of or aggravated the injury. In so doing, the court necessarily departed from its prior construction of the statute and engrafted additional conditions onto the statutory definition of injury and the phrase "arising out of" in an apparent effort to serve a newly perceived policy interest in limiting the act's coverage. Since that decision, the application of this limiting notion in diverse factual contexts has led to a lack of uniformity in results. See Lovett v. Gore Newspapers Co., 419 So.2d 306 (Fla. 1982) (claimant, injured by a fall on a linoleum-covered concrete floor, permitted recovery, despite the claimant's preexisting condition of scoliosis, because of the employer's requirement that she perform additional work); Honeywell, Inc. v. Scully, 289 So.2d 393 (Fla. 1974) (injuries resulting from a fall, caused in turn by a fainting spell, held to be noncompensable because the hazard of employment did not aggravate the injuries); Southern Convalescent Home v. Wilson, 285 So.2d 404 (Fla. 1973) (injuries suffered by claimant following fall caused by epilepsy arose from a risk or condition personal to him, and did not arise out of his employment); Federal Electric Corp. v. Best, 274 So.2d 886 (Fla. 1973) (death benefits denied following the employee's skull fracture, caused as a result of the employee's epileptic seizure); Medeiros v. Residential Community of America, 481 So.2d 92 (injuries suffered during course of employment when claimant fell on a stairway while delivering a package, held noncompensable because the cause of the fall was solely attributable to her personal condition and employment conditions did not increase the risk of injury); House v. Preferred Auto Leasing, 476 So.2d 1337 (aggravation to claimant's preexisting injury, caused by a fall, held compensable because employment conditions increased the risk of injury in that an employment condition  a tire carried on claimant's shoulder  contributed to the fall); Legakis v. Sultan & Sons, 383 So.2d 938 (Fla. 1st DCA 1980) (injuries suffered by fall during course of employment held compensable, notwithstanding claimant's preexisting condition, labyrinthitis, was a contributing factor because a chemical spray that claimant inhaled contributed to claimant's fall and resulting injuries); Cheney v. F.E.C. News Distribution Co., 382 So.2d 1291 (nature of claimant's work duties increased the hazard of injury without consideration of the object on which claimant fell, a terrazzo floor).
We think it obvious, in view of the above opinions, that the construction of the statutory language adopting the increased-hazard rule has produced results which are confusing, inconsistent and discriminatory in the same or similar factual situations. For example, the claimant in Lovett was permitted compensation, on the theory, among other things, that the surface of the floor on which she fell  a linoleum-covered concrete floor  contributed to the risk of injury. On the other hand, the claimant in Honeywell, Inc. v. Scu'ly was precluded from recovering, because the hazard to which she was exposed, a tile-covered concrete floor, was said not to have contributed to the risk of injury. Adding to the confusion, Federal Electric Corporation v. *331 Best, denied compensation because the object causing claimant's injury, a desk, could not be considered an increased employment hazard (although the structure or cabinet enclosing a piece of machinery would be  see Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342), the court stating, among other things, "the desk which Best may have hit was ... [no] more of a `hazard of employment' that any ordinary piece of furniture would be." 274 So.2d 889. In Cheney v. F.E.C. News Distribution Co., 382 So.2d 1291, the court, without considering the hardness of the floor that caused claimant's injuries  a terrazzo floor  focused its attention on the nature of the employment duties performed by the claimant in reaching its determination that the claim was compensable. In Medeiros, the employee's claim was held noncompensable, notwithstanding the fact, as observed by the dissent, that "her nonemployment environment did not require her to negotiate stairs or carry packages while wearing the braces [resulting from injuries suffered by her in a previous noncompensable accident] as she could control these activities at home," 481 So.2d at 94, and notwithstanding that the fall she suffered was on a concrete stairway, which would, even under the normal application of the increased-hazard rule, be considered an increased risk of employment.

III.
We strongly question whether a construction of the statute that has produced such inconsistent and uncertain results remains workable. Recognizing that such inconsistency and uncertainty is usually avoided by a simple straightforward construction of the statute, we believe, consistent with the decision in Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342, that it should be given a straightforward construction to provide compensability of any injury to a worker during the course of his or her employment resulting from a fall at any place where the employee's duties require him to be, regardless of whether the act of falling was initiated by a condition personal to the claimant  a view we shall refer to, for lack of a better term, as the actual-risk doctrine. After careful research and analysis, we consider this doctrine to embrace the most logical and reasonable meaning of the statutory language to carry out the manifest purpose and intent of the workers' compensation act. See cases cited at 1 Larson, The Law of Workmen's Compensation § 12.14(a) X-XXX-X-XXX, n. 24 (1984) [hereinafter: Larson].
The Texas Court of Civil Appeals, in General Insurance Corp. v. Wickersham, 235 S.W.2d 215 (Tex.Civ.App. 1950), accurately summarized the legal theory underlying the increased-hazard doctrine and the actual-risk approach:
The cases denying compensation [increased-hazard approach] do so on the theory that a floor presents no risk or hazard that is not encountered everywhere, and that such risks and perils as they do present are only those which confront all members of the public. The cases allowing compensation [actual-risk approach] do so on the theory that the injury need not be the product of a peril or hazard which exposes the employee to extraordinary risk, in order to be compensable, and that the hazard presented by the floor renders the injury compensable, not because it should have been foreseen or expected, but because it is a hazard that is peculiar to the employment, and is one that is incidental to and grows out of the employment. To quote from the opinion in Savage v. St. Aeden's Church, supra: "The risk may be no different in degree or kind than those to which he may be exposed outside of his employment. The injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment."
Id. at 218.
It should be noted that the Texas appellate court did not consider whether the hazard at issue represented a risk different in degree and danger than one that the claimant would necessarily encounter in his or her normal nonemployment life, but rather looked at the actual risk which *332 caused injury, i.e., striking the floor, and approved benefits because the employee was exposed to it as a necessary incident of employment. In doing so, the court, in effect, adopted the actual-risk doctrine regarding which, as paraphrased by Professor Larson, a number of courts are saying: "We do not care whether this risk was also common to the public, if in fact it was a risk of this employment." Larson § 6.40, 3-6 (emphasis in original). Larson also observes that "[i]t is a more defensible rule than the preceding ones [the peculiar and increased-hazard doctrine], since there is no real statutory basis for insisting upon a peculiar or increased risk, as long as the employment subjected claimant to the actual risk that injured him." Id.
The illogical inconsistencies of the increased-hazard doctrine were further criticized by the Supreme Court of New Jersey in George v. Great Eastern Food Products, Inc., 44 N.J. 44, 207 A.2d 161, 162 (1965):
The result of the rule is the drawing of an obviously indefinite and, to us, unsatisfactory line. If the inception of the fall has the slightest connection with the employment, the resulting injury is compensable. If the employee is caused to fall idiopathically and is located in the course of his employment at even a slight height at the fall's inception or is standing at floor level and on the way down falls into a pit or strikes a table, chair, desk, stove, machinery or some other object situate[d] on the employment premises, the resulting injury is compensable. Seemingly also, he would be compensated if, through sheer awkwardness, he tripped over his own feet and fell to the floor or, by reason of a congenitally weak back, fell on his head when leaning over to pick up a pencil. But not so, ... if he suffered a spontaneous attack of vertigo and struck nothing but the floor during his descent from a standing posture. The distinctions are neither consistent nor meaningful. Either no consequence of an idiopathic fall should bring compensability or the nature of the result alone should be looked to as the determinant.
(Citations omitted). The court concluded, following the principle that the employer takes the employee as he finds him (as does Florida), that a compensable accident occurs if either the circumstance causing the injury or the result occurring to the employee was unexpected, regardless of whether the inception, or the underlying reason for the circumstance or result, was personal or work-connected. Id. at 163. Under this approach, if an unexpected accident during the course of employment is caused by any condition of the employment, it is treated as arising out of employment.
The Supreme Court of California follows a similar construction. In Employers Mutual Liability Insurance Co. v. Industrial Accident Commission, 41 Cal.2d 676, 263 P.2d 4 (1953), the court refused to make any distinction between situations allowing an employee compensation for injuries suffered from a fall on the employer's premises during the course of employment; the same result follows whether the employment conditions presented an increased risk of injury, such as a fall from a height or on or against some unusual object, or whether the fall itself was caused by the employee's idiopathic condition. In rejecting such distinction and permitting compensation for all injuries suffered during the course of employment, the court stated:
The reasoning of those authorities [allowing recovery] is that the injury for which compensation is sought, was caused by the impact of the employee's body with an object or surface of the employer's premises, and hence arose out of the employment, because such injury was an incident thereof, although the fall may also have been a causal factor which had no connection with the employment. That reasoning is equally applicable where the fall is merely to the floor or ground, in the course of the employment, and death or injury results from striking the floor or ground. It has been held that such injury arises out of the employment, and is compensable, although the fall was caused by a disease of the employee, *333 having no relation to the employment.
263 P.2d at 5. The court concluded with the following observations:
Thus in the instant case it is not a ground for annulling the award of compensation that the employee might have had a fall (resulting in bodily injury) caused by an idiopathic condition but occurring at home, on the street or elsewhere when he was tending to his private affairs. The fact remains that he injured himself while at work, on his employer's premises, the injury being the striking of his head against the floor, a condition incident to the employment. His condition may have been a contributory cause but it was not the sole cause of his injury. It would not be doubted that if an employee fell to the ground or floor in the course of his employment, and as a result was injured, the injury would be compensable whether the cause of the fall was a slippery or defective floor, or was due to nothing more than his innate awkwardness or even carelessness.
Id. at 6-7 (emphasis supplied).
We hold the view that the same analysis should be applied under the Florida statute to employee injuries resulting from falls during the course of employment, regardless of the cause which precipitated the fall. By so doing, the focus of analysis shifts from emphasis on the cause of the accident (an approach more familiar to a fault system) to emphasis on the cause of the injury (more consistent with the no-fault concept of workers' compensation).
The rationale used in determining the compensability of "internal failure" injuries during the course of the employee's employment  see, e.g., Southern Bell Telephone & Telegraph v. McCook, 355 So.2d 1166; Market Food Distributors, Inc. v. Levenson, 383 So.2d 726, wherein compensation is denied if the exertion resulting in the injury is no greater than that normally performed by the employee during his nonemployment life  is not, in our view, applicable to cases in which the immediate cause of the injury is known to be the collision of the employee's body with the floor, or some other object, during work. The focus of the court's inquiry should be directed, then, not to the cause of the fall, but the actual condition or employment risk that caused the injury. This is so because construing the statutory phrase and analyzing the facts of the case in terms of whether a condition or risk was created by the employer and caused the fall or accident harkens back to concepts of negligence and fault, and thus is patently inconsistent with the policy and purpose of the workers' compensation law to eliminate consideration of fault or responsibility for the cause of the accident.
The inappropriateness of applying the same or similar test to injuries resulting from internal failures and those caused by falls during the course of employment is clearly exemplified in the following opinion of the Louisiana Supreme Court in Guidry v. Serigny, 378 So.2d 938, 939-940 (La. 1979):
In instances where the plaintiff seeks to recover for a disabling heart attack, he must show a causal relationship between the heart attack, his employment and his resulting disability. To establish this causal relationship, it need not be shown that the attack was caused by extraordinary activities. It is sufficient to show that the death or disability resulting from the accidental injury (heart attack) was caused or precipitated by the usual and customary actions, exertions and other factors connected with her employment. Despite counsel's reliance on these cases, they are distinguishable from the instant suit... . In the above cases, the accident producing objective symptoms of an injury was the heart attack. Here, the plaintiff's accident was not the fainting spell, heart attack or slip which may have caused her to fall. Plaintiff's accident was the fall itself and this is so regardless of the precipitating reason therefor.
(citations omitted). We cannot avoid noticing the similarity of this rationale and that applied in Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342.
*334 The construction of the statutory phrase to allow compensation for falls suffered during the course of employment, regardless of the existence of a personal condition which may have initiated or caused the fall, is simply a logical extension of the commonly stated maxim "that the employer takes the worker as the worker is found  with all the strengths and weaknesses the worker brings to the job." Chapman, Dependents of v. Hanson Scale Co., 495 So.2d 1357, 1360 (Miss. 1986). Under this construction, a floor, regardless of its degree of hardness, would be regarded the same as any other condition or piece of equipment on the premises, and, as such, any injury suffered by the worker in a fall upon a floor is an encounter by the employee with an employment condition which contributes to his injury or death, and, thus, as a matter of law, the injury necessarily arises out of it and in the course of employment.

IV.
Larson presents an alternative to outright adoption of the actual-risk approach just discussed which he characterizes as the positional-risk theory. Larson suggests that by invoking the principle that the employer takes the employee as he finds him, insofar as the employee's internal weaknesses are concerned, a court could reasonably conclude that an idiopathic fall is not purely personal, but is sufficiently connected with the employment under the implied acceptance theory to justify placing such an injury in a neutral category. The neutral category, or positional-risk approach, recognizes that unexplained falls are generally compensable, on the strength of the presumption that an injury occurring during the course of employment arises out of the employment in the absence of evidence to the contrary. See Larson, § 12.14(f), 3-335. See also § 440.26, Fla. Stat. (1985).
Florida courts have applied the neutral or positional-risk theory. See Hacker v. St. Petersburg Kennel Club, 396 So.2d 161 (Fla. 1981). In Hacker, the injured employee was unable to offer any cause as to the reason for his fall. The employer and carrier controverted the claim, contending that the fall was totally idiopathic and not causally related to the employment. In reversing the denial of compensation, the Florida Supreme Court applied the statutory presumption provided in section 440.26, stating that in the absence of substantial evidence to the contrary, a claim comes within the provisions of the chapter. The court held that if an accident occurs while an employee is at his place of employment during working hours, under circumstances such that evidence of cause is unavailable, the burden shifts to the employer to show idiopathic cause, before the claim for compensation may be denied. See also Drybala v. Hanger One, Inc., 393 So.2d 660 (Fla. 1st DCA 1981).
The present case is, of course, distinguishable in that the cause of the fall was not unexplained. Larson, however, suggests that if all idiopathic falls were placed in the neutral category[1] and assimilated under the theory of unexplained falls, the result would be that the employee would no longer have to overcome a "presumptively personal cause, but only a neutral cause, [which] could then be held adequate to support an award under the `quantum' concept of work-connection." Larson at 3-336. Under this theory, Larson states that the course of employment and arising out of employment tests are not applied independently from the other, so that deficiencies in the strength of one factor are sometimes allowed to be made up by the strength in the other. Larson, § 29, 5-354. Cf. Strother v. Morrison Cafeteria, 383 So.2d 623, 626 (Fla. 1980) (in determining whether a claimant suffered a compensable accident as a result of injuries she sustained outside the time and space limits of her employment, the terms "arising out of" and "in the course of employment" are considered *335 part of a single test of work-connectedness). If, for example, a case presents a strong "course" element and a weak "arising" element, as in idiopathic fall-injury cases, where the course of employment test is satisfied beyond a reasonable doubt, the resulting injuries from the fall would be held compensable, notwithstanding the fact that the "arising" or causal factor is very weak and would not have occurred to the employee but for the obligation of the employment which placed him or her in the position to be injured. Larson continues that, because the "course" element is so strong in idiopathic-fall injuries, awards are becoming increasingly common on such facts. Larson at 5-357.

V.
Regardless of which category of risk an injury of this sort is to be placed in, there are only two places where the loss may fall  either on industry or on the employee. In a situation where an idiopathic fall causing injury occurs during the course of employment, that burden should, consistent with case law interpretations of other provisions of the Workers' Compensation Law, appropriately be placed on industry.
In saying the above, we consider that Florida cases involving the doctrines of merger and apportionment are not inapposite to following the actual-risk approach because idiopathic falls frequently cause aggravations of personal conditions that workers bring with them to the employment. For example, in deciding whether or to what extent apportionment should be applied to permanent disability benefits when a worker's "preexisting disease is ... aggravated by accident arising out of and in the course of the employment," pursuant to Section 440.02(19), Florida Statutes (1961) (now renumbered Section 440.02(1), Florida Statutes (1985)), the Florida Supreme Court has held, as a logical extension of the maxim that the employer accepts the employee as he finds him, that it was the duty of the court to minimize any inconsistency with the above maxim when applying apportionment provisions. Evans v. Florida Industrial Commission, 196 So.2d 748, 751 (Fla. 1967); accord Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986). Consequently, apportionment was considered appropriate only as to disabilities which resulted from the normal progress of the disease, i.e., those that would have existed if the industrial accident had never happened. 196 So.2d at 752. All other categories of permanent disabilities would, however, be fully compensated.
Although the burden of loss would, under the conditions stated, fall upon the employer subject, of course, to the employer's right to apportionment, the employer would nonetheless, if the increased-hazard approach were abandoned, have the right to reimbursement from the Special Disability Trust Fund upon compliance with the statutory requisites provided in section 440.49(2), Florida Statutes.
In balancing the question of which of the two  employer or employee  could greater bear the burden of loss if the actual-risk rule be applied, we have little difficulty in saying that, given the structure of the Workers' Compensation Law, the employer should ordinarily have superior resources over those of the worker to endure the costs of such injuries.
As the appellate court now charged with the primary responsibility to review all workers' compensation appeals to effectuate the uniform and indiscriminate application of chapter 440, we would, pursuant to this analysis, construe and apply the statutory phrase "arising out of employment" in accordance with the actual-risk theory for the reasons discussed above, believing that such construction is completely consistent with the supreme court's early decision in Protectu and more in keeping with the purposes of the act. But to do so we realize that we would have to rule somewhat inconsistently with supreme court decisions handed down subsequent to Protectu. Because it is not the province of a district court of appeal to so depart from or overrule established precedent of the Florida Supreme Court, we certify to that court the following question as one of great public importance:

*336 In applying the pertinent provisions of chapter 440, are accidents suffered by employees in falls which are attributable to idiopathic causes personal to the employee and result in injuries from collision with the floor, equipment or other conditions of the workplace, permissibly treated as arising out of the employment irrespective of any showing of increased risk or hazard attributable to the work place?
REVERSED and REMANDED.
ERVIN, SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] The neutral-risk category is a category in which the risk is neither distinctly one of employment nor of a personal character, i.e., such as where a worker is shot by a bullet of unknown cause, stabbed by a lunatic, struck by lightning, or injured from a cause completely unknown to anyone. Larson, supra § 7.30 at 3-13.