WENTWORTH, Judge.
Appellants, the employer/carrier, seek review of a workers’ compensation order *1352 by which they were ordered to pay temporary total and temporary partial disability benefits, and medical bills, and to furnish future medical care and treatment to appel-lee, a self-employed building contractor. Appellants contend the deputy commissioner erred in finding that appellee sustained a compensable injury arising out of his employment, and argue that the injury resulted instead from an idiopathic condition. We find the record medical evidence supports the deputy’s finding that appellee’s injury arose out of his employment, and affirm the order, which reads in part:
While seated at his desk in his office on September 3, 1985, the Claimant turned to his left and reached for a set of blueprints pigeon-holed nearby. In the process, he twisted his upper body while at the same moment, he reached out for the plans. He experienced excrutiating [sic] pain and became paralyzed from the neck down. He tried to run his chair around but could not move ... He remained this way for 45 minutes until his wife found him. An ambulance was called and he was taken to the hospital where he was seen by Dr. Douglas Stringer, a physician specializing in neurosurgery.
Under the supervision of Dr. Stringer, tests were performed which were not particularly helpful in the ultimate diagnosis. Dr. Michael Walker, a neurologist, was brought in for consultation. Based on his examination of the Claimant, tests results, and history, Dr. Walker thought the Claimant had sustained a traumatic contusion of the spinal cord when he reached for the set of plans at work. According to Dr. Walker, the Claimant has been severely impaired since. By December 3,1986, he was able to do some very light work on a limited basis. By January 14, 1986, the Claimant was able to ambulate with the aid of a cane. Dr. Walker testified that spinal cord injuries are slow to heal and it may take two years before the Claimant will know the extent of his permanent impairment, if any.
Following hospitalization in Panama City, he was transferred to Shand’s
Teaching Hospital in Gainesville. In Gainesville, the Claimant was seen by another Dr. Walker who did not think that Claimant’s problems were vascular in origin. His initial diagnosis was acute quadripareses — etiology unknown. A MRI of the cervical, thoracic, and lumbar spinal cords were within normal limits which helped Dr. Robert Walker rule out vascular anomalies or extrinsic compression unappreciated on the myelogram. His final diagnosis was acute transverse myelitis which seemed to be resolving. The Claimant does not have a history of back pain or serious back trouble. A CT scan, myelogram, and a MRI of his back failed to show any defect after the surgery. The Claimant does smoke three packs of cigarettes a day and experienced severe left sided headaches beginning five years before his injury.
Dr. Axley, a neurologist practicing in Pensacola, reviewed the reports and deposition of Dr. Michael Walker and came to the conclusion that the Claimant’s qua-dripareses was caused by the cut-off blood supply to his cervical spine when he stretched for the plans at work. He was less inclined to believe the injury was caused by a sudden protrusion of the cervical disc which thereafter returned to normal. This was referred to as the “karate chop” theory. According to Dr. Axley, if the paralysis was caused by a momentary loss of blood supply, the underlining [sic] vascular deficiency was probably pre-existing.
Considering Dr. Michael Walker’s familiarity with the Claimant and the history of the events surrounding the onset of the symptoms, his opinions are accepted as controlling when in conflict with the other physicians who testified.
[[Image here]]
Having adopted Dr. Michael Walker’s opinions regarding causation, the Claimant in this case did not have a pre-exist-ing condition. The injury was caused by a traumatic event, albeit internal in nature ....
*1353 Appellee’s claim was for temporary total, temporary partial, and permanent total disability benefits, wage loss benefits, and medical treatment and hospitalization. Appellants controverted the claim on grounds that the injury did not arise out of or in the course of employment, but was due instead to an idiopathic condition. Following the hearing, the deputy commissioner found, as indicated above, that appellee’s injury was the result of a traumatic event rather than a preexisting condition, and that there was a causal connection between appellee’s work activities and his injury. He therefore found the injury to be compensable.
Medical evidence as to the diagnosis of appellee’s sudden paralysis was conflicting. The deputy commissioner chose to rely on the opinion of Dr. Michael Walker, the initial treating neurosurgeon, because of his familiarity with appellee’s medical condition. Dr. Walker’s testimony provides competent, substantial evidence that appel-lee’s turning and bending motions while seated at his desk caused his injury:
Q: Okay. So given the history that he gave you of the twist and the turn and the pull, it’s your opinion based on reasonable medical probability or certainty that the activity that he was engaged in brought about his condition?
A: Yes, sir. I think ... by the history I received the patient had turned and bent to get something and I felt that at that time that that was probably the cause of his injury.
Dr. Walker further stated:
When we arrive at a question of the most likely or most probable diagnosis, I think we have to use history, physical findings and laboratory information. It was our impression at the time ... that the most likely cause and therefore I’d say the most medically probable was that his injury or condition was related to that movement because of the coincidence that when he did that he had the symptoms.
To permit a determination of compensa-bility there must be 1) an accident, 2) occurring in the course of employment, and 3) arising out of employment. Southern Bell Telephone and Telegraph Company v. McCook, 355 So.2d 1166 (Fla.1977). The compensable injury must originate from some risk connected with the employment or flowing as a natural consequence from the employment.” McCook at 1168, citing Suniland Toys & Juvenile Furniture, Inc. v. Karns, 148 So.2d 523, 524 (Fla.1963).[1] This case is distinguishable from McCook and its progeny in that no idiopathic condition was found to be present when appellee injured himself, and appellee’s turning and bending motions were determined to be the sole cause of his sudden paralysis. Where such a determination is made based on evidence that no personal risk was involved, as in this case, “[a]ny employment contribution ... is enough, because it is greater than the zero employee contribution.” IB A. Larson, The Law of Workmen’s Compensation, sec. 38.83(b) (1987) at p. 7-278. Upon competent and substantial, though conflicting, medical evidence that appellee did not suffer from an idiopathic condition, the deputy found his work activity was in this case sufficient employment contribution to support the determination of compensability.
Appellants argue also that the deputy commissioner erred in denying their motion for independent medical examination. We find the denial was not an abuse of discretion upon our review of evidence showing that appellants did not submit the motion until fourteen days prior to the hearing, did not refer to specific tests which had not been performed, and did not explain how further tests would add to the medical evidence already available.
The order is affirmed.
NIMMONS and ZEHMER, JJ., concur.

. Cf. Grimes v. Leon County School Board, 518 So.2d 327 (Fla. 1st DCA 1987).