579 So.2d 195 (1991)
Betty J. MONETTE, Appellant,
v.
MANATEE MEMORIAL HOSPITAL, Self-Insured, Appellee.
No. 90-2253.
District Court of Appeal of Florida, First District.
April 18, 1991.
Rehearing Denied June 4, 1991.
James E. Hutchens, Sarasota, for appellant.
Keith A. Mann of O'Riorden, Mann, Ingram & Dunkle, P.A., Sarasota, for appellee.
JOANOS, Judge.
The claimant in this workers' compensation case appeals an order of the judge of compensation claims denying compensability of the injury incurred resulting from claimant's reaction to an influenza vaccination given to her by the employer at the place of employment. We reverse.
Claimant filed a claim for temporary total disability benefits and medical benefits for a left arm injury she suffered due to a serious reaction to a flu shot. The employer/servicing agent (e/sa) accepted the medical opinion that claimant suffered a reaction to the flu vaccination which immobilized her shoulder, and ultimately developed into adhesive capsulities or frozen shoulder syndrome. However, the e/sa disputed claimant's contention that the flu shot was an employer-sponsored benefit as a regular incident of the claimant's employment which inured to the benefit of the employer.
The record reflects that claimant's work history has been limited to hospital housekeeping. Her duties at Manatee Memorial Hospital included work in the laboratory, the third floor surgery, and the emergency room. Although claimant was not directly involved in patient care, she had some patient contact in the performance of her duties. Claimant testified that she had always worked in hospitals, and regularly took a flu shot for her own protection and for the protection of patients. Prior to the instant incident, claimant had never experienced a reaction to a flu shot.
In September 1988, a memorandum notice was circulated to all departments at Manatee Memorial Hospital, announcing the availability of free flu shots to hospital *196 employees. The memorandum was circulated annually. On September 19, 1988, claimant clocked in at 2:55 p.m., went to the emergency room, and got a flu shot. She experienced an immediate pain reaction, which she reported to the nurse who administered the shot, and to her supervisor. It is undisputed that acceptance of the offered flu shot was voluntary.
The health services manager at Manatee Memorial testified that the flu vaccination program is offered every year, because the Advisory Council for Immunization Practices recommended the flu vaccine for persons in high risk categories, and the hospital has many employees who fit the high risk classification in terms of age and susceptibility to influenza. According to the health services manager, the hospital has many employees on limited incomes and the vaccine is offered free to facilitate their remaining reasonably healthy. Claimant's employee health record shows that claimant has chronic pulmonary disease, placing her within the high risk category of susceptibility to influenza.
The health services manager further testified that the hospital does not have a stated policy in connection with the flu vaccination program. Only eleven per cent of the hospital's employees took the flu shots, and of the forty-eight persons who worked in the housekeeping department, only two persons received the vaccine. The health services manager stated the possibility of flu among hospital employees could not be linked to insurance costs. She further stated that participation in the program by high risk employees could benefit the hospital, since absenteeism could be an issue, but vehemently denied that the purpose of the flu vaccine program was to reduce employee absenteeism. The health services manager also testified that hospital employees were at no greater risk of contracting flu than the general population.
In the order here appealed, the judge of compensation claims concluded that no causal relationship had been shown between claimant's disability from the flu shot and a risk connected with her employment. Consequently, the judge ruled that claimant's injury was not compensable, and dismissed the claim with prejudice.
For an injury to be compensable under the Workers' Compensation Act, the claimant must show the existence of three elements: (1) an accident, (2) occurring in the course of employment, and (3) arising out of the employment. Southern Bell Tel. & Tel. Co. v. McCook, 355 So.2d 1166, 1167-1168 (Fla. 1977). That is, the claimant must show that his injury can be attributed to some event or circumstances connected with his work. Gray v. Employers Mutual Liability Ins. Co., 64 So.2d 650, 651 (Fla. 1952). In Strother v. Morrison Cafeteria, 383 So.2d 623, 628 (Fla. 1980), the principle was stated thusly:
We hold that to be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances. This latter factor may be proved by showing that the causative factors occurred during the time and space limits of employment.
Another frequently cited formulation states that an injury arises out of and in the course of employment if it occurs "within the period of employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of employment, or engaging in something incidental to it." Gray v. Eastern Airlines, Inc., 475 So.2d 1288, 1289 (Fla. 1st DCA 1985), review denied, 484 So.2d 8 (Fla. 1986), quoted in Ramada Inn Surfside v. Swanson, 560 So.2d 300, 303 (Fla. 1st DCA 1990).
In the instant case, the judge relied primarily on the decision in Suniland Toys and Juvenile Furniture, Inc. v. Karns, 148 So.2d 523 (Fla. 1963) to deny compensability. Karns is factually similar, in that as in this case, the injury was caused by an allergic reaction to an inoculation. The claimant in Karns drank contaminated water at work, thereby becoming exposed to typhoid. The lessor of the business premises where Karns worked provided free inoculations available to all employees at the shopping center during working hours. In *197 Karns, the court reasoned that since disability resulting from exposure to the disease would be compensable, injury caused by medical treatment reasonably required by the exposure should be compensable. The court found that even though there was no direct effort to influence Karns to accept inoculation, the element of coercion existed by virtue of the exposure to disease.
The Karns analysis began with the statement that "to be compensable, an injury must have originated in some risk connected with the employment or flowing as a natural consequence from the employment." 148 So.2d at 524. The order in the instant case indicates that the denial of compensability was premised on the Karns finding that under the particular circumstances there existing, the inoculation was of benefit to the employer because it "was calculated to reduce the risk of compensable disability." (Emphasis supplied.) 148 So.2d at 525. The judge found an absence of risk in this case, based on testimony that hospital employees were at no greater risk than the general population of contracting flu. The judge concluded that "application of the Karns rationale compels a determination the claimant did not sustain a compensable injury."
In making this determination, the judge overlooked the alternative theory for compensability recited in Karns, i.e., that an injury can be compensable if it "flow[s] as a natural consequence of the employment." 148 So.2d at 524. In this case, the hospital health services manager testified that free flu vaccinations were made available to hospital employees because such programs were recommended by the National Advisory Council, and particularly so for persons in high risk categories. The health services manager conceded that claimant is in a high risk category. Claimant testified that she has always worked in hospitals, and has always availed herself of flu shots, to avoid contracting flu and to avoid transmitting it to patients. It is undisputed that the flu vaccine was administered to claimant by a hospital employee, in the hospital emergency room, during claimant's normal work shift. The circumstances of this case indicate that the allergic reaction claimant experienced flowed as a natural consequence of her employment. In other words, by virtue of her employment in a hospital setting, claimant recognized her responsibility to protect patients from exposure to flu, and availed herself of the opportunity to avoid contracting flu. On the basis of the undisputed facts existing in this case, we conclude the judge of compensation claims was obligated to find the claim compensable.
An additional basis for compensability in this case is apparent by analogy to the personal comfort doctrine. By availing herself of the offered flu shot, claimant's effort to avoid illness that would impair her work performance is incidental to her employment in the manner of (1) an employee's illness caused by a contaminated soft drink bought on the business premises, Louis v. Louis's Amoco, 534 So.2d 417 (Fla. 1st DCA 1988); (2) an employee's injury incurred during a work break to buy cigarettes and then struck by a car; Holly Hill Fruit Products, Inc. v. Krider, 473 So.2d 829 (Fla. 1st DCA 1985); (3) employee injured while using restroom at work, Citrus Memorial Hospital v. Cabrera, 388 So.2d 345 (Fla. 1st DCA 1980); (4) employee injured by electric socks worn in effort to stay warm at work, Baker v. Orange County Board of County Commissioners, 399 So.2d 400 (Fla. 1st DCA), review denied, 411 So.2d 383 (Fla. 1981). It seems clear that an employer derives a benefit from maintaining the health of employees in much the same fashion as an employer is benefited by improved employee morale under the personal comfort doctrine.
Accordingly, the order dismissing the claim for benefits is reversed, and the cause is remanded for further proceedings.
ERVIN and MINER, JJ., concur.