KAHN, Judge.
Appellant Howard Acker seeks review of a compensation order finding his neck injury to be noncompensable. On April 21, 1992, Mr. Acker, then employed by appellee Burklew as a carpenter at a home construction site, had an onset of neck pain, accompanied by restriction of neck motion and muscle spasm. The evidence in this case is that Acker had preexisting degenerative arthritis in his neck, which had not caused any symptoms or problems prior to April 21, 1992. Burklew took the position that Acker’s neck pain on the job was purely fortuitous and not causally related to his employment. In rejecting the claim on the basis of compensability, the judge of compensation claims (JCC) made the following findings:
At the specific time of the Claimant’s onset of pain, he was holding a piece of fascia board weighing between 25 and 30 pounds when he looked up in response to someone on the roof calling to him. The Claimant testified that he was not under any strain from holding the fascia board and that his onset of pain came solely from his having looked up. I find, based upon the evidence presented in the Claimant’s testimony, the Claimant’s recorded statement, and the deposition of Dr. Seig, that the claimant’s simple action of looking onto the roof caused him to physically strain his neck. I find that the Claimant injured his neck purely from the action of looking upward. This finding is consistent with the testimony of Dr. Seig and the description of the onset of pain as given by the claimant.
We affirm.
For an injury to be compensable under the Workers’ Compensation Act, three elements must exist: 1) an accident, 2) occurring in the scope of employment, and 3) arising out of the employment. Monette v. Manatee Memorial Hospital, 579 So.2d 195 (Fla. 1st DCA 1991). A condition is considered to arise out of the employment when the employment necessarily exposes claimant to conditions that would substantially contribute to the risk of injury and to which the claimant would not normally be exposed during his nonemployment life. Medeiros v. Residential Communities of America, 481 So.2d 92 (Fla. 1st DCA 1986). “An idiopathic condition which results in injury to a worker does not arise out of employment unless the employment in some way contributes to the risk or aggravates the injury.” Southern Bell Telephone & Telegraph Co. v. McCook, 355 So.2d 1166, 1168 (Fla.1978).
Claimant strenuously argues in this case that the JCC erred by finding, in the words of the order, claimant injured his neck “pure *1213 ly from the action of looking up.” Acker contends that at the time he felt pain he had “snapped” or “jerked” his neck up in an unusual or extreme manner. Acker points to several portions of the hearing testimony in which he stated, variously, “I snapped my %neck up real quick,” “I snapped my head up,” “I was jerking up.” Referencing these and other items of testimony, appellant argues that his action was extreme, i.e. snapping or jerking, and was peculiar to the work he was doing at the time. More particularly, he points out that he was on the ground when he had a call from a roofer which required him to look up to the roof to respond to the call.
Although claimant has pointed to evidence supportive of his theory of the case, other evidence of a more equivocal nature exists. In his prehearing deposition, Acker testified, “I was running the fascia, and I went to put it up, and somebody called. And I looked up, and something snapped in my neck.” When asked in his deposition, “And your neck was fine until you looked up?” Acker responded, “Right.” The treating physician, Dr. Seig, charted Acker’s history, “Howard went back to work and during the course of his employment was working overhead. He felt a snap in his neck....” On deposition, Dr. Seig testified that Acker reported he “was looking up, and he felt a snap in his back....” In addition to the deposition and hearing testimony, Acker gave a recorded statement to an adjuster for Burklew. In that statement, Acker recounted, “Someone called me from the roof and I snapped up and something-snapped in my back.” In the same statement, he also stated, “And I just looked up real quick and something snapped ... because I looked up, up to the roof.” The record also contains statements from two coworkers, one of whom, William Kicker, was working directly beside Acker. Kicker recalls that appellant “looked up then immediately.” Another coworker, Robert Cottrill, testified that appellant “twisted his neck” when he was “looking up on the roof.”
Based upon the foregoing excerpts from the record, we are unable to say, as a matter of law, that the record does not contain competent substantial evidence to support the JCC’s conclusion that Acker’s onset of neck pain was occasioned by the mundane activity of merely looking overhead, as opposed to some sort of more extreme or violent action peculiar to the construction industry. Under the ease law, the JCC properly found that although Acker was on the job at the time, he was not exposed by his employment to conditions that one would not normally encounter during nonemployment life. Medeiros, supra. See also, Hillsborough County School Board v. Williams, 601 So.2d 624 (Fla. 1st DCA 1992) (although cleaning the bus was required by claimant’s job as a school bus driver, a back injury suffered when claimant bent over to pick up a piece of paper while cleaning the bus was noncom-pensable, since it was solely the result of a normal movement); Market Food Distributors Inc. v. Levenson, 383 So.2d 726 (Fla. 1st DCA 1980) (injury did not arise out of employment where claimant bent over to pull out a 20-30 pound desk drawer which caused an asymptomatic spinal disease to become symptomatic).
These cases control the outcome of the present issue and are to be contrasted with Distinctive Builders of Panama City Inc. v. Walker, 518 So.2d 1351 (Fla. 1st DCA 1980), a case in which an office worker became paralyzed when he turned to reach for a set of blueprints stored near his desk. The claimant in Walker had no underlying or idiopathic condition present when he injured himself. Rather, his “turning and bending motions were determined to be the sole cause of his sudden paralysis.” 518 So.2d at 1353.
In the present case Dr. Seig testified that Acker suffered a sprain or strain of his cervical spine superimposed on preexisting degenerative arthritis. Although Dr. Seig did not give definite testimony as to the mechanism of injury, he speculated that when someone with a preexisting arthritic neck looks up inadvertently beyond his restricted range of motion, he could get “some tearing and so forth of the ligaments and you would get flareup of the arthritic changes and the whole works.” Where the activity does not arise out of the employment, and is rather a result of a normal movement, a finding that claimant has suffered “an aggra *1214 vation of a preexisting condition causally connected to (his) employment is inconsistent and constitutes reversible error.” Hillsborough County School Board v. Williams, supra at 625.
The sole basis for affirmance in this case is the existence of competent substantial evidence to support the ultimate conclusion of the JCC that claimant injured his neck purely from the normal action of looking up, an action, as acknowledged by Dr. Seig, engaged in by most people on a regular basis. “This court does not retry workers’ compensation claims at the appellate level, nor do we substitute our judgment for that of the JCC on factual issues supported by competent substantial evidence.” Ullman v. City of Tampa Parks Dep’t, 625 So.2d 868, 874 (Fla. 1st DCA 1993).
AFFIRMED.
BARFIELD, J., concurs.
SHIVERS, Senior Judge, dissents with written opinion.